JEFF GRANT (SBN 218974)
JGrant@foxrothschild.com
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone: 310-598-4150
Facsimile: 310-556-9828

ERNEST EDWARD BADWAY (*pro hac vice*)
EBadway@FoxRothschild.com
**FOX ROTHSCHILD LLP**
101 Park Ave., 17th Floor
New York, NY 10178
Telephone: 212-878-7900
Facsimile: 212-692-0940

Attorneys for Plaintiff and Counter-Defendant,
LIAIGRE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LIAIGRE, INC., a Delaware Corporation,

Plaintiff,

v.

CALIFORNIA FURNITURE COLLECTION, INC. d/b/a ROBERT JAMES COLLECTION, a California Corporation; GINA B & COMPANY, INC., a California Corporation; and DOES 1-10,

Defendant.

CALIFORNIA FURNITURE COLLECTION, INC. d/b/a ROBERT JAMES COLLECTION, a California Corporation; GINA B & COMPANY, INC., a California Corporation,

Counter-Claimants,

vs.

LIAIGRE, INC., a Delaware Corporation,

Counter-Defendant.

Case No.: 8:19-CV-01160-JAK-KES

Hon. Judge John A. Kronstadt

**PLAINTIFF LIAIGRE, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Complaint Filed: June 11, 2019
Trial Date: None Set

Hearing Date: May 17, 2021
Hearing Time: 8:30 a.m.
Courtroom: 10B

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL ARGUMENT .......... 1

A. Liaigre USA Proved Its Trade Dress Infringement Claim. .......... 1

1. Liaigre USA's Asserted Trade Dress Is Nonfunctional. .......... 1

2. Liaigre USA's Trade Dress Has Acquired Secondary Meaning. .......... 2

a) Defendants' Intentional Copying Is Sufficient To Create An Inference Of Secondary Meaning. .......... 2

b) Liaigre USA Has Proved Secondary Meaning. .......... 4

B. Liaigre USA Proved Its Copyright Infringement Claim. .......... 5

1. Liaigre France Owns French Copyrights. .......... 6

2. Liaigre USA Has Standing Under U.S. Law. .......... 8

3. The Liaigre Furniture Are Copyrightable. .......... 10

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*, 2017 WL 3319190 (D. Ore. Aug. 3, 2017) ........ 3

*Art Attacks Inc., LLC v. MGA Entm't, Inc.*, 581 F.3d 1138 (9th Cir. 2009) ........ 3, 5

*Atari Interactive, Inc. v. Hyperkin Inc.*, 2020 WL 4287584 (C.D. Cal. July 27, 2020) ........ 2, 3

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859 (9th Cir. 2020), *cert. denied*, No. 20-873, 2021 WL 850632 (U.S. Mar. 8, 2021) ........ 2, 4

*California Furniture Collection, Inc. v. Harris Adamson Home, LLC*, 2019 WL 7882081 (C.D. Cal. Oct. 18, 2019) ........ 9, 10

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001) ........ 2, 3

*Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992 (S.D. Cal. 2000) ........ 2

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017) ........ 8, 9

*EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*, 284 F. Supp. 3d 1065 (E.D. Cal. 2018) ........ 3

*First Brands v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987) ........ 4

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, 2012 WL 3072327 (C.D. Cal. Apr. 25, 2012) ........ 3, 4, 5

*HISC, Inc. v. Rajanayagam*, 810 Fed. Appx. 560 (9th Cir. 2020) (unpublished) ........ 3

*Jason Scott Collection Inc. v. Trendily Furniture LLC*, Case No. CV-17-02712-PHX-JJT, Dkt. #129 (D. Ariz. Mar. 9, 2021) ........ 3

*Minden Pictures v. John Wiley & Sons*, 795 F.3d 997 (9th Cir. 2015) ........ 8, 9

*Oregon Arms, Inc. v. Oregon Arms Ltd.*, 246 F.3d 675 (9th Cir. 2000) (unpublished) ........ 3

*Pagliero v. Wallace China Co.*, 198 F.2d 339 (9th Cir. 1952) ........ 1

*Star Athletica v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017) ........ 10

*Walker and Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007) ........ 3, 5

**Statutes**

French Intellectual Property Code Art. L. 113-2 ........ 6

French Intellectual Property Code Art. L. 113-5 ........ 6, 7

**Other Authorities**

J. Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition* § 7:80 (5th ed. March 2021 Update) ........ 1

# I. INTRODUCTION

Defendants attempt to escape liability, not by presenting evidence they did not copy Liaigre's trade dress and copyrighted furniture designs, but by arguing the Court should rule CFC's copying permissible because copying may have "salutary effects."[1] Defendants, however, ignore a fundamental legal principle—one may copy only that intellectual property not otherwise protected. Intellectual property laws exist to protect inventors of creative works, not shield serial copiers from liability so they can reap the fruits of others' labors. Trade dress and copyright law protect the Liaigre Furniture.[2]

# II. LEGAL ARGUMENT

## A. Liaigre USA Proved Its Trade Dress Infringement Claim.

### 1. Liaigre USA's Asserted Trade Dress Is Nonfunctional.

Defendants first argue that Liaigre USA's asserted trade dress is un-protectable because it is "aesthetically functional." [ECF Dkt. #111, at p. 3]. The sole "factual" basis Defendants cite for their argument is Liaigre's alleged focus on aesthetic appeal when designing furniture, while relying upon a nearly ***60-year-old*** case of *Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952). The asserted trade dress, however, is not aesthetically functional. [*See* ECF Dkt. #107, at pp. 4-7].

This Circuit has "consistently retreated from the position taken in" *Pagliero*. J. Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition* § 7:80 (5th ed. March 2021 Update). Further, this Circuit also recently clarified the aesthetic functionality inquiry to be "whether, if one seller were given exclusive rights to use

---

[1] Unless otherwise stated, all capitalized terms have the same meaning as defined in Liaigre's Motion for Summary Judgment ("Liaigre's Motion"). [*See* ECF Dkt. #98-1].

[2] In Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Liaigre's Opposition") [ECF Dkt. #107], Liaigre USA addressed nearly all of the arguments raised in Defendants' Opposition to Liaigre's Motion. To avoid repetitive briefing, Liaigre USA respectfully refers the Court to its Opposition for a more detailed recitation of the law and its application.

the claimed trade dress, other sellers would be forced to use alternative designs that make their product more costly to sell, or for which consumers' willingness to pay would be lower for reasons having nothing to do with the reputation of any source…." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020), *cert. denied*, No. 20-873, 2021 WL 850632 (U.S. Mar. 8, 2021).

Defendants fail to present any argument or evidence showing that protection of Liaigre USA's asserted trade dress would create a significant, non-reputational-related competitive advantage. Rather, the evidence shows protecting Liaigre USA's asserted trade dress would not create any competitive advantage because infinite alternative designs exist for tables, chairs, and benches. [*See* ECF Dkt. #107, at pp. 5-6].

**2. Liaigre USA's Trade Dress Has Acquired Secondary Meaning.**

Defendants next argue that Liaigre USA has failed to establish that the asserted trade dress has acquired secondary meaning in the minds of the relevant purchasing public by claiming Liaigre USA supposedly misapplied the facts and law regarding design copying, and its burden of proof responsibility. [ECF Dkt. #111, at pp. 8-16].

**a) Defendants' Intentional Copying Is Sufficient To Create An Inference Of Secondary Meaning.**

Defendants baselessly argue the pervasive evidence of intentional copying in this case is insufficient to create an inference of secondary meaning because courts cannot infer secondary meaning based on copying without evidence of defendant's intent to pass off. [ECF Dkt. #111, at pp. 8-11; ECF Dkt. #107, at pp. 12-15].

Initially, this Circuit has never held evidence of intentional copying cannot support an ***inference*** of secondary meaning. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264 (9th Cir. 2001). This Circuit held it could create such an inference, and merely held proof of intentional copying ***did not shift the burden of***

***proof*** for secondary meaning from plaintiff to defendant. *Id.*[3] Further, later Ninth Circuit decisions discussing copying include no reference to any requirement that plaintiff produce evidence of defendant's intention to pass its product off as plaintiff's product. *See HISC, Inc. v. Rajanayagam*, 810 Fed. Appx. 560, 561 (9th Cir. 2020) (unpublished); *Art Attacks Inc., LLC v. MGA Entm't, Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009); *Clicks Billiards*, 251 F.3d at 1264; *Oregon Arms, Inc. v. Oregon Arms Ltd.*, 246 F.3d 675, at *2 (9th Cir. 2000) (unpublished).[4]

Moreover, recent Ninth Circuit district court cases hold evidence of intentional copying can create an inference of secondary meaning, ***without*** evidence defendant intended to pass its product off as plaintiff's product. *See Jason Scott Collection Inc. v. Trendily Furniture LLC*, Case No. CV-17-02712-PHX-JJT, Dkt. #129, at p. 4 (D. Ariz. Mar. 9, 2021), attached as Badway Opp. Decl. Ex. 9 [ECF Dkt. #107-4]. *See also Atari*, 2020 WL 4287584, at *13; *Adidas Am., Inc. v. Skechers USA, Inc.*, 2017 WL 3319190, at **12-13 (D. Ore. Aug. 3, 2017). Liaigre USA detailed the overwhelming evidence of intentional copying in this case. [*See* ECF Dkt. #98-1, at pp. 15-18; ECF Dkt. #107, at pp. 13-15]. Ninth Circuit district courts have found inferences of secondary meaning in cases involving far weaker evidence of intentional copying. *See, e.g., Atari*, 2020 WL 4287584, at *14 (finding inference of secondary meaning based on copying where defendant sold the accused products under its own

---

[3] *Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1009 (S.D. Cal. 2000), a district court decision, is not binding on this Court. *Atari Interactive, Inc. v. Hyperkin Inc.*, 2020 WL 4287584, at *16 (C.D. Cal. July 27, 2020).

[4] Defendants also rely on *Fuddruckers* and *Leatherman Tool*—both of which predate *Clicks Billiards*. [ECF Dkt. #111, at pp. 8-11]. The Third Circuit cases Defendants also cite are outdated and irrelevant. [*Id.*]. Further, neither of the Ninth Circuit district court cases Defendants cite hold intentional copying cannot create an inference of secondary meaning absent evidence of intent to pass off. *See EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*, 284 F. Supp. 3d 1065, 1074 (E.D. Cal. 2018); *Walker and Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1181 (N.D. Cal. 2007).

mark); *Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, 2012 WL 3072327, at *4 (C.D. Cal. Apr. 25, 2012) (finding inference of secondary meaning where defendant knew of trade dress before launching accused products and the products were visibly similar).

**b) <u>Liaigre USA Has Proved Secondary Meaning.</u>**

As to their claim Liaigre USA failed to satisfy its burden of proving secondary meaning, Defendants first argue Liaigre's sales are too low to support secondary meaning, by mistakenly citing trade dress cases where plaintiffs sold millions or billions of products. [ECF Dkt. #111, at p. 13]. These cases do not apply here since they involved inexpensive products the public can routinely afford.[5] The parties' target purchasers are designers purchasing for high net worth individuals. [ECF Dkt. #107, at pp. 8-9]. Thus, the market for the Liaigre Furniture is small but lucrative, and Defendants cite no evidence to support the assertion that Liaigre USA's sales are low when viewed in the context of the luxury furniture market. [ECF Dkt. #111, at p. 13]. The comparison between sales volume for luxury furniture and inexpensive products is simply not valid because a smaller purchasing public necessarily results in a smaller volume of overall sales. [ECF Dkt. #107, at pp. 8-9].

Defendants next argue Liaigre USA's advertising cannot support secondary meaning because it is not "look for" advertising. Liaigre has engaged in a ***global*** advertising campaign focusing on product images, shared design aesthetics emblematic of Liaigre, and Liaigre's name—all in close proximity to one another. [ECF Dkt. #98-1, pp. 2-5, 25-26; ECF Dkt. #107, at pp. 10-11]. Liaigre's advertising combination engenders an association in the minds of the purchasing public between the Liaigre Furniture (*i.e.*, the asserted trade dress) and Liaigre. [*Id.*].

Further, the Ninth Circuit cases Defendants cite do not support their argument. While the *First Brands* court noted the plaintiff's advertising did not stress the color

---

[5] The sales cited in *Blumenthal* also covered a 22-year period—far longer than the period at issue in this case. *Blumenthal*, 963 F.3d at 863.

and shape of the jug by, "for example," urging consumers "to look for 'the familiar yellow jug,'" it never held the plaintiffs must use "look for" advertising. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987). It held only that the "the ads must feature in some way the trade dress itself"—Liaigre's advertising certainly does. *Id.* *Art Attacks* does not even discuss "look for" advertising. *Art Attacks*, 581 F.3d at 1146.

Defendants also assert that the Court should disregard Liaigre USA's reliance on *Interactive Health* and *Asics Corp.*, two Central District of California cases holding "look for" advertising is not required, yet they attempt to rely on the district court case of *Walker & Zanger*. [*See* ECF Dkt. #107, at p. 11, n.10]. Defendants' argument makes no sense here because the asserted trade dress is the overall appearance of the Liaigre Furniture, not a specific feature Liaigre USA can call out in its advertising.

Finally, Defendants argue Liaigre USA cannot cite exclusive use of its asserted trade dress because Liaigre based the Liaigre Furniture designs on historical designs and similar designs exist in the market. Defendants' arguments are meritless. [ECF Dkt. #107, at pp. 11-12]. Defendants' expert, Lance Rake, concedes novelty and non-obviousness are not requirements for trade dress protection, and none of the alleged historical products identified is identical to any of the Liaigre Furniture. [*See* Badway Declaration in Support of Plaintiff Liaigre, Inc.'s Reply ("Badway Reply Dec."), filed herewith, at Ex. 6 (Rake Dep.), at Tr. 130:15-18, 132:21-133:10]. Further, Defendants have not adduced any admissible evidence of third party products, allegedly similar to the Liaigre Furniture, sold in the United States. [ECF Dkt. #107, at pp. 11-12].

**B. <u>Liaigre USA Proved Its Copyright Infringement Claim.</u>**

Under French law, a legal person who has unequivocally exploited a work under its name is presumed to own the copyrights. This is undisputedly the case here. Further, Liaigre France granted Liaigre USA an exclusive license, sufficient to confer standing on Liaigre USA to bring this action

**1. Liaigre France Owns French Copyrights.**

Defendants would have this Court believe that demonstrating copyright ownership under French law is a difficult task. That is not the case, especially for a business like Liaigre France, operating a thriving design studio that employs between 20-30 designers at a time and publishing the furniture under its name. Appendix A to Liaigre's Opposition [ECF Dkt. #107, at pp. 37-42] shows other Liaigre furniture where the French courts recognized Liaigre France as the owner of valid and subsisting copyrights in its furniture. In each of those cases, Liaigre France did not bring any additional proof of ownership beyond what it has provided here.

Under L.113-1 of the French Intellectual Property Code, "authorship shall belong, unless proved otherwise, to the person or persons under whose name the work has been disclosed." [Greffe Dec. ¶ 17, ECF Dkt. #107-7]. French case law provides that a legal person who has unequivocally exploited a work under its name is presumed to own the copyrights; no further evidence is required. [*Id.* ¶ 18]. This has been the law in France since 1993, and has been recently upheld by France's highest court in a 2014 decision. [*Id.* at ¶¶ 18-23 and Ex. 4 ("[T]he unequivocal exploitation of a work by a natural person or legal entity, under its name and in the absence of any claim by the author(s), gives rise to a presumption, with respect to the third party sought for infringement . . . whether or not it is collective, of the author's intangible property right.")]. Liaigre France has presented and sold the Liaigre Furniture under its name for years, without challenge, and no one other than Liaigre has claimed any copyright in the Liaigre Furniture. Thus, the presumption applies, not only in cases brought in France, but in cases like this one brought under the Berne Convention, ending any inquiry into ownership. [*Id.* at ¶ 30 and Exs. 14 and 15)].

The Liaigre Furniture also satisfies the requirements for "collective works." Under French law, a work may be the result of contributions from several authors, which merges into the whole and makes it not possible to attribute to each author a separate right in the work. [ECF Dkt. #97-53, at p. 3 (French IP Code Art. L. 113-2)].

A collective work is the property of, and the author's rights vest in, the person under whose name the work was disclosed. [*Id.* at p. 3-4 (French IP Code Art. L. 113-5)].

Liaigre France controlled the design process from the beginning through the final product by providing guidelines and aesthetic instructions to the creative team of over 20 designers. [ECF Dkt. #98-1, at pp. 18-20 and #107, at pp. 25-26]. All of the designs were created under the direction of Mr. Liaigre and on the initiative of Liaigre France, and, to eliminate any doubt as to ownership, Mr. Liaigre executed contracts with Liaigre France in 2009 and 2016, recognizing the furniture as collective works and transferring any rights to any of the furniture he created to Liaigre France. [ECF Dkt. #95-10, at pp. 5-7, 13-14, and 33]. Similarly, all designers employed by Liaigre France granted it the patrimonial rights/economic rights to all designs created, including the designs of the Liaigre Furniture. [ECF Dkt. #95-13, at pp. 40-45].[6]

Defendants rely on Nicolas Binctin to argue that this evidence is insufficient. Mr. Binctin would have this Court believe that witness testimony or even an affidavit is never sufficient to establish a collective work, and only contemporaneous documentation is permissible. [Badway Reply Decl., Ex. 7 (Binctin Dep.), at Tr. 23:2-24:7]. This assertion is contrary not only to established French case law [Greffe Dec. at ¶ 44, ECF Dkt. #107-7; *see also id.* Exs. 16 and 17], but also to Mr. Binctin's prior expert opinion on collective works. In the only other U.S. case Mr. Binctin was involved in, he opined that, under French law, sufficient evidence existed to support a finding of a collective work by relying solely on a photograph and a single affidavit

---

[6] Defendants specifically mention Liaigre's Bomarzo Table, which was a collaboration between Mr. Liaigre and Eric Schmitt in 1998. [ECF Dkt. #95-13, at p. 18 (SUF 44)]. Via written document, Mr. Schmitt transferred the economic/patrimonial rights to Mr. Liaigre and Liaigre France. [*Id.*] In the two decades since the piece was created, neither Mr. Schmitt nor anyone else has ever challenged Liaigre France's right to exploit the piece. Further, even if Mr. Schmitt only transferred his rights to Mr. Liaigre, as Defendants argue, Mr. Liaigre transferred the rights to Liaigre France when he signed his 2009 and 2016 agreements with Liaigre France. [ECF Dkt. #95-10, at pp. 5-7, 13-14, and 33].

describing the creative process. *Id.* [ECF Doc. #107-4, at pp. 85-91]. This is far less than what Mr. Binctin now claims is required by French law, and far less that what Liaigre has presented here. Liaigre has provided the testimony of several employees, contemporaneous emails, historical articles describing the design process, design plans, and more—this evidence is more than sufficient to establish a collective work. [ECF Dkt. #95-13 at SUF ¶¶ 3, 11, 20, 28, 36, 53, 62, 86, 87].

It is a reality of the French business model that a studio engaged in the business of designing and exploiting furniture retains the right to exploit those designs. To rule otherwise would run contrary to years of settled French case law. As such, Liaigre France is the owner of the copyrights for the Liaigre Furniture.

**2. Liaigre USA Has Standing Under U.S. Law.**

Defendants acknowledge that Liaigre produced a signed written agreement, dated February 15, 2012. [ECF Dkt. #111, at p. 31]. As established in Liaigre's Opposition, once Liaigre USA provided a signed written agreement conveying an exclusive license, Defendants as third-party infringers, lack standing to challenge the sufficiency of the agreement under the Copyright Act. [ECF Dkt. #107, at pp. 28-31].

Further, Defendants recycle the same inapposite cases from their Motion for Summary Judgment to claim that Liaigre USA lacks standing and is not an exclusive licensee. [ECF Dkt. #97-1, at pp. 28-31]. However, each of these cases involved a purported exclusive licensee, who was unable to procure a signed writing conveying an exclusive license from the copyright owner. [ECF Dkt. #107, at pp. 28-31]. These factually distinct cases are, therefore, inapplicable to this matter.

Perhaps the only new argument Defendants raise is an attempt to mis-characterize *Minden Pictures v. John Wiley & Sons*, 795 F.3d 997 (9th Cir. 2015). To Defendants, *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 984 (9th Cir. 2017), "clarified" the standard. However, all *DRK Photo* stated was that the issue of if a licensee is exclusive or non-exclusive depends on the terms of the agreement between the agent and the photographer/copyright owner. 870 F.3d at 978.

The *DRK Photo* court found that the agency agreements at issue permitted the photographers to appoint other agents, and failed to label DRK as an "exclusive" agent, while expressly providing that any sales or leases DRK entered into were presumptively non-exclusive. *See id.* at 981. These agreements did not have language parallel to the language in the *Minden* agreements, providing in substance "'that Minden, and *only* Minden, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the photographs.'" *Id.* at 984 (quoting *Minden*, 795 F.3d at 1005). The *DRK Photo* court added that the agreements "also lack any limitation whatsoever on the photographers' authority to contract with other licensing agents. In the absence of any such promise, DRK's Representation Agreements confer nonexclusive licenses and do not render DRK a legal owner for standing purposes." *Id.* at 984-985. Here, Liaigre has established that Mr. Caillaud used the term "exclusive" in the signed, written exclusive license; Liaigre USA contracted directly with third-party US showrooms to show and offer the Liaigre Furniture for sale; engaged in its own advertising budgets to advertise the Liaigre Furniture in the US; entered into advertising agreements with third parties to advertise the Liaigre Furniture; and employed its own US employees to promote, sell, and exploit the Liaigre Furniture. [ECF Dkt. #98-1, at pp. 15, 21-22, 33-34].

Unable to establish any facts indicating that the license granted by Liaigre France to Liaigre USA is not exclusive under the Copyright Act, Defendants rely on a *hypothetical* to claim Liaigre France has placed "no restriction on Liaigre France's ability to license rights to other parties." [ECF Dkt. #111, at p. 32]. While Defendants resort to a hypothetical is an obvious attempt to salvage a failing argument, Mr. Caillaud provided testimony regarding Liaigre USA's rights and abilities granted under the exclusive license, which are to the exclusion of Liaigre France. [ECF Dkt. #97-6, at Tr: 34:23-38:15]. However, even if Defendants had standing to challenge the formality of the license, Liaigre France and Liaigre USA's executive has already confirmed that Defendants' hypothetical situation is devoid from reality, and,

therefore, nonsense.

Just as the courtroom doors were summarily slammed shut on CFC and its very same counsel's face in *California Furniture Collection, Inc. v. Harris Adamson Home, LLC*, 2019 WL 7882081, at *2-3 (C.D. Cal. Oct. 18, 2019), when they based their arguments in that case on fundamental misunderstandings of the basic principles underlying standing requirements of the Copyright Act, so should this Court shut the door on Defendants' legally erroneous argument regarding Liaigre USA's standing.

**3. <u>The Liaigre Furniture Are Copyrightable.</u>**

Lastly, Defendants claim Liaigre USA's copyright claim fails because the Liaigre Furniture do not meet the separability test in *Star Athletica v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017). Defendants rely solely on a U.S. Copyright Office Circular and a "summary" of the Berne Convention found on a website—neither are legal authority and both conflict with recent Ninth Circuit district court decisions.

The Liaigre Furniture are French foreign works, and French law governs the existence and ownership of valid copyrights in the Liaigre Furniture. [ECF Dkt. #107, at pp. 25-27]. Further, the parties' French law experts agree that separability does ***not*** apply under French law. [*Id.*, at p. 26]. Significantly, Defendants fail to cite a single case holding the United States doctrine of separability applies to foreign works.

While Defendants' Opposition includes no discussion of the application of separability to the Liaigre Furniture, in an abundance of caution, Liaigre USA's design expert, Charles L. Mauro CHFP, undertook a separability analysis as to each piece of Liaigre Furniture. He concluded that they have separable features that satisfy the *Star Athletica* test. [*Id.*, at pp. 27-30]. Liaigre USA respectfully refers the Court to its Opposition for its analysis of separability as applied to the Liaigre Furniture. [*Id.*].

## III. <u>CONCLUSION</u>

Liaigre respectfully requests that the Court enter an Order granting Liaigre's Motion in Liaigre's favor on all of Liaigre's claims and Defendants' counterclaims.

Dated: April 5, 2021

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: *<u>/s/ Ernest Edward Badway</u>*
Jeff Grant, Esq.
Ernest Edward Badway, Esq.
Daniel M. Rosales. Esq.
*Attorneys for Plaintiff and Counter-Defendant Liaigre, Inc.*