UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION - SANTA ANA

-oOo-

HONORABLE JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

LIAIGRE, INC., a Delaware Corporation,

    Plaintiff/Counter-Defendant,

  v.                                              No. 8:19-cv-01160-JAK

CALIFORNIA FURNITURE COLLECTION, INC. D/B/A ROBERT JAMES COLLECTION, a California Corporation; GINA B & COMPANY, INC., a California Corporation; and DOES 1-10,

    Defendants/Counter-Claimants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

JULY 10, 2023

_____

SUZANNE M. McKENNON, CRR, RMR
UNITED STATES COURT REPORTER

UNITED STATES COURTHOUSE
350 W 1st STREET, ROOM 3411
LOS ANGELES, CALIFORNIA 90012
(213) 894-3913
suzanne@ears2hands.com

```
 1   APPEARANCES:

 2


 3   On Behalf of the Plaintiff and Cross-Defendant:

 4        ERNEST E. BADWAY, Attorney at Law
               Fox Rothschild LLP
 5             101 Park Avenue, 17th Floor
               New York, New York 10178

 6


 7        RANELLE A. LEIER, Attorney at Law
               Fox Rothschild LLP
 8             33 South Sixth Street, Suite 3600
               Minneapolis, Minnesota 55402

 9


10

11   On Behalf of the Defendants and Cross-Claimants:

12        SCOTT P. SHAW, Attorney at Law
               Merchant and Gould, P.C.
13             611 Wilshire Boulevard, Suite 808
               Los Angeles, California 90017

14

15

16

17

18

19

20

21
22

23

24

25
```

```
 1         (Proceedings commenced on July 10, 2023, at 10:38 a.m.)
 2             THE COURT:  Item 28, CV 19-01160, Liaigre versus
 3  California Furniture Collection.
 4      Would you state your appearances, please, starting with
 5  the plaintiff's Counsel?
 6             MR. BADWAY:  Good morning, Your Honor.  Ernest Badway
 7  and Ranelle Leier for the plaintiff.
 8             THE COURT:  Good morning, Mr. Badway.
 9      Good morning, Ms. Leier.
10      For the defendants?
11             MR. SHAW:  Scott Shaw on behalf of defendants, Your
12  Honor.  Good morning.
13             THE COURT:  Good morning, Mr. Shaw.
14      And I take it no other Counsel will be participating
15  today; is that right?
16             MR. BADWAY:  Not for the plaintiffs, Your Honor.
17             THE COURT:  Mr. Shaw, that is correct?
18             MR. SHAW:  That's correct, Your Honor.
19             THE COURT:  All right.  We're here today on a status
20  conference on trial scheduling, and I've reviewed your -- the
21  joint witness list and the joint reports.  And I recognize
22  there is some issues there that have been presented that are
23  beyond what the purpose of today's hearing.
24      But if I accepted your collective proposals on witnesses
25  and trial length, this would turn into a three-week trial at
```

1  least, And I don't think this is warranted.  I think this
2  trial -- in reading through the witnesses many -- there are
3  certainly -- many topics that are identified, same topic as to
4  more than one witness.
5       So my view is this is in effect not a trial that should
6  take 80 hours-plus, which is about 16 days, plus the jury
7  selection plus jury instructions and openings and closings and
8  so on.  I just don't think so.  I think what I'm inclined to do
9  consistent with cases like this and others that I've handled
10 would be the following, and I'll hear from you.
11      I would provide each side with 18 hours of trial time and
12 that -- what does that mean?  That means when you're making an
13 opening statement, closing argument, and when you're examining
14 a witness whether on Direct, Cross, or Redirect.  It does not
15 include the time for jury selection.  It does not include any
16 time we're spending outside, well, not -- outside the presence
17 of the jury on a matter.  Those things are not part of that.
18      And as is also my practice, if I'm persuaded during the
19 course of the trial that the parties or a party requesting
20 additional time beyond that amount of time has proceeded
21 efficiently and that it has shown good cause for additional
22 time, then I will evaluate that in that context.  Those are my
23 views.
24      But I recognize we can agree to disagree, but before we do
25 that, let me hear your views.  Mr. Shaw?

```
 1          MR. SHAW:  I think the 18 hours is fine with
 2  defendants, Your Honor.  Just for clarification, did you say
 3  opening and closing are included within the 18 hours or they
 4  are not included?
 5          THE COURT:  They are included.
 6          MR. SHAW:  They are.  Okay.
 7          THE COURT:  Just jury selection is not; when I'm
 8  reading jury instructions, it's not; and when we're working
 9  outside the presence of the jury, you are not on the clock.
10  You are on the clock when you are at the microphone.
11          MR. SHAW:  Okay.  Understood.
12          THE COURT:  Or your colleague.
13          MR. SHAW:  Those times, those are fine with the
14  defendants.
15          THE COURT:  All right.  Thank you.
16      Mr. Badway?
17      Ms. Leier?
18          MR. BADWAY:  Your Honor, most respectfully, we
19  disagree.  We have seven designs that we have to prove multiple
20  causes of action for.  The witnesses that we've provided are
21  not duplicative.  We spent a great deal of time making sure
22  that there was no duplicative testimony.
23      I would also add, Your Honor, that three of the witnesses
24  are going to need Interpreters, including Mr. Caillaud as well
25  as Ms. Jensen, so --
```

```
 1              MS. LEIER:  Meyer.
 2              MR. BADWAY:  Meyer.  Excuse me, Your Honor, Meyer.
 3        And we also have a design expert who is going to use
 4   demonstratives and testify as to seven designs.  So I
 5   understand the Court wants to have it streamlined and
 6   efficient, and that's what we've tried to do, too.
 7        But we don't believe -- unless defendants are willing, for
 8   example, to stipulate to, you know, copyright ownership, we
 9   just don't see how we're going to be able to fit it in given
10   the fact that openings and closings are also part of this and
11   Cross-examinations of the defendants witnesses, how we're going
12   to be able to fit that into 18 hours.  That is essentially,
13   Your Honor, three days worth of testimony.
14              THE COURT:  No, it's not.  It's four days of
15   testimony.  18 hours is about four days -- four to five days.
16   That is how much time we get in in a day.
17              MR. BADWAY:  Your Honor, I'm sorry.  I was looking at
18   your rules.  It's approximately four days.  You have from
19   Tuesday to Friday.  And it comes out to between five and six
20   hours' worth of time on each day.
21              THE COURT:  It does, but that's not all for
22   testimony.
23              MR. BADWAY:  Okay.  All right.  I understand, Your
24   Honor.
25              THE COURT:  Your proposal, as I stated -- the
```

1  proposal you're making is close to a three- to four-week trial.
2  I just don't see that.  And I understand your position, but as
3  I've also stated, if I'm persuaded during the course of the
4  trial that you've been efficient and we're not hearing evidence
5  that is cumulative, then I would take that into account.
6       And I agree with you, when there is an Interpreter, it
7  does increase the amount of time.  We're not there yet.  We're
8  not at the final point of --
9       MR. BADWAY:  No.
10      THE COURT:  -- final point here.  I just think this
11 is -- some of the descriptions about -- some of the witness
12 descriptions -- and to be sure, I only can base on a summary of
13 descriptions -- seem to me to talk about overlapping issues.
14 Yes, there are seven or eight matters, but I also expect that
15 there is going to be overlap there even in the sense that
16 you'll be the expert and others would be describing what makes
17 something unique and what doesn't and how people -- how the
18 showrooms work and the locations of showrooms relative to each
19 other and that sort of thing.  I just don't think everything
20 needs to be repeated as to each alleged infringing action.  But
21 I -- go ahead.
22      MR. BADWAY:  Your Honor, look, I appreciate Your
23 Honor's comments and everything.  And believe me, in a perfect
24 world, I would like for Your Honor to be right.  I would like
25 for this trial to be even shorter, but given the history of

1  this litigation and given exactly what has occurred and what we
2  have to demonstrate and prove, I just can't see 18 hours being
3  the case.  But I hear Your Honor, and if that is where Your
4  Honor is going to go, I am going to have live with it, and I am
5  just going to have to make an application during the trial for
6  more time.
7  	Because I can already tell you, Your Honor, our expert who
8  is going to testify, we cut him down to seven hours.  You know,
9  we thought his testimony at least on Direct would be at least
10  two and a half days' worth of testimony, but we told him
11  already that his testimony -- it can't go more than what we
12  have it on.  So it's like -- and this is something we've asked
13  for from our witnesses.  It's something we've reviewed given
14  their depositions and all of that.  So we were already bare
15  bones when we submitted this joint witness report.
16  	THE COURT:  When was the last time you had a
17  four-week trial in a civil action?
18  	MR. BADWAY:  2016, Your Honor.
19  	THE COURT:  What kind of a case was it?  Where was
20  it?
21  	MR. BADWAY:  It was a trade dress in the Eastern
22  District of New York.  And God bless his soul, Judge Arthur
23  Spatt was the Judge.  He has passed away since that time, Your
24  Honor.
25  	THE COURT: All right.  Well, I understand what you

1  are saying.  And as I've stated, I will keep an open mind in
2  terms of this, but I think that, as experienced and able trial
3  lawyers, I am sure you're aware that the more efficient you are
4  the better it is in the eyes of the jurors for both of you.
5          MR. BADWAY:  Sure.  Okay.
6          THE COURT:  I think there are benefits here for --
7  but I can't make a final -- I'm not making a final
8  determination.  I can't do so.  But I can just say that, based
9  on what I've seen and based on my experience of overseeing
10 trials for a couple of decades, I think that this is not a
11 one-month trial or four-week trial.  But I'll keep on open mind
12 and so on.  But I'm sure you'll do your best.
13         And naturally -- and this is important.  And maybe you've
14 already been doing this, so I don't mean to be lecturing.  But
15 anywhere where you can reach agreements on matters so that the
16 testimony wouldn't be necessary on authenticating something or
17 there is other matters in which you might stipulate, do that
18 because you are doing each other a favor.  You are doing the
19 jurors a favor.  Maybe you've already done that, but if not,
20 keep that in mind as well, please.
21         MR. BADWAY:  Yes, of course, Your Honor, of course.
22         THE COURT:  Now just a minute.
23      (A discussion was held off the record.)
24         THE COURT:  All right.  We're going to have a further
25 final pretrial conference on August 21, and at that time, I'll

be addressing other issues that have come up.  We can talk further about this one.

And, again, to be clear, Mr. Badway, I will have an open mind.  But that would be another time where to the extent you reach agreements on things you could, including even a verdict form, those are -- because a verdict form -- I mean, I recognize parties often disagree about verdict forms, but there's a good example of one where you might agree.  We'll see.

And the other question I have is -- before I turn to my final question, is there anything else you wanted to raise, Mr. Badway?

MR. BADWAY:  Yes, Your Honor.  One thing we would like to raise -- and I've never appeared before Your Honor for a trial before.  I would normally call chambers.  But given your rules, I want to make sure I do this out in the open.  Do you have any trials coming up between now and ultimately when we schedule this trial?  And I know defense Counsel has some discussion about the actual schedule of the trial because I would like to just see how the Court handles the trial, if that is okay with the Court.

THE COURT:  We do have other trials scheduled including one that is starting tomorrow.  And so it's never -- we have more than that.  There is other trials scheduled between now and when your trial is scheduled to commence, and

1  there can also be -- other things can arise that can affect
2  this.  But that is why we have the final pretrial conference --
3  that is two weeks before still?
4          THE COURTROOM DEPUTY:  Uh-huh.
5          THE COURT:  That is why at the final pretrial
6  conference, I'll be able to give you a much more clear vision
7  of how the trial date looks.  I recognize that in this instance
8  you may be having witnesses traveling not just across the
9  United States but some can be coming from overseas so you need
10 to know that, and we'll work with you on that.
11         MR. BADWAY:  Well, actually, Your Honor, my point was
12 I would like to sit in for a day to see how you -- to be blunt,
13 how Your Honor runs a trial just so that I am familiar so when
14 you call it.  So if you have things scheduled, I'll try to get
15 that information.
16         THE COURT:  It will be on the docket.
17         MR. BADWAY:  Thank you, Your Honor.
18         THE COURT:  You're welcome.  But in terms of -- if we
19 haven't discussed this before in terms of -- just in terms of
20 how things are done during Voir Dire, I conduct the Voir Dire.
21 I will be reviewing your proposed Voir Dire.  I may ask some of
22 it but not necessarily all of it.  After I voir dired the first
23 eight jurors, because I will only seat eight, we will go to the
24 side and discuss with you any cause issues or any follow-up
25 questions either side has as to any of those eight.  I may then

1  ask further follow-up questions.
2         Any time of any of the eight is excused for cause, we'll
3  seat a new eighth juror, move through the same process.  After
4  we've seated eight jurors as to whom there is either no cause
5  challenge or I've overruled any cause challenge, then the
6  peremptories can be exercised.  Each time a peremptory is
7  exercised, we'll seat a new eighth juror and go through the
8  same process.
9         Jurors are advised to listen to the Voir Dire of those,
10 before they're seated in box or while they're in the box
11 because, as the process goes forward, the Voir Dire can become
12 more efficient.  We don't necessarily have to ask every
13 question -- the same question of every juror as opposed to
14 asking whether they have been listening and, if so, have they
15 found any matter that they think may apply to them.
16        After the -- if you pass on a peremptory, you don't waive
17 it.  After we have the jurors sworn, we typically take then a
18 break to have the jurors get acclimated and to excuse any
19 prospective jurors who are no longer needed.  Depending likely
20 turn then to the opening -- to the opening instructions
21 followed by opening statements.
22        In my experience in Day 1 of a trial, we'll complete the
23 Voir Dire.  We'll seat a jury.  We'll complete the opening
24 instructions.  We'll complete the opening statements, assuming
25 each side makes opening statements at the same -- you know, at

the beginning, and not -- the defendant doesn't reserve.  And we'll get at least to the first witness.

In terms of exhibits, I want the exhibit disputes -- I want those resolved before trial so we don't spend time on that.  We'll need the exhibits in the binders that are available so there is, you know, conformance with the rule -- one for the witness, one for the Court, one for the clerk.

And, you know, during the Direct Examination and Cross-examination of witnesses, if there are objections, I will rule on them.

We'll take breaks sometimes when the jurors indicate they need a break, but, generally, we'll take breaks that correspond to our schedule of 8:30 start to 2:30 end, couple of short breaks.  But sometimes we have to take -- it's more efficient to take a break sooner or later given where a witness is.  If we have a particular witness who's testifying and it's approaching our closing time for that day and it's going to take another 30 minutes to finish that witness, we will likely do that and so on.

I expect Counsel to be collaborative.  If there is a witness -- if there's a scheduling issue with a particular witness who should be taken out of order, I would expect you to work collaboratively and accomplish that.  I mean, that's the norm.

But you are certainly welcome to sit in at any time and

```
 1  view any proceedings, but those are some of the standard
 2  points.
 3          MR. BADWAY:  Thank you, Your Honor.
 4          MR. SHAW:  Thank you.
 5          THE COURT:  You're welcome.  Do you have any specific
 6  questions about trial?
 7          MR. BADWAY:  No, Your Honor.  That was it.
 8          THE COURT:  Okay.  Mr. Shaw anything?
 9          MR. SHAW:  Yeah.  So on June 12, Your Honor, we
10  filed -- we conferred, and we filed a joint status report
11  Docket 182.  And a couple of things in that report, plaintiff's
12  Counsel represented that he needed 12 weeks for completing the
13  secondary meaning survey and finishing discovery of the
14  experts.  We had some time less than that.
15      One thing, at least for defendants, is that we noted for
16  the Court that Gina B, the Gina B defendants were unavailable
17  on the date that the Court had set the trial date for, and
18  they're one of the named defendants in the case.  They have
19  told me that they are unavailable -- it's two individuals.
20  They are unavailable September 3rd, September 10th, and
21  October 8th.
22      We had -- I think that -- I'll let Mr. Badway speak for
23  himself and his client.  But I think we had suggested having
24  the trial date some time after the date that is set now, and we
25  have not proceeded to do a Rule 60-2 conference or anything of
```

```
 1  the sort yet.  Neither side has disclosed secondary meaning
 2  survey experts yet, so I don't know what Mr. Badway's thoughts
 3  on that or what the Court's thoughts are, but we had
 4  anticipated having a trial date some point later in time.
 5          THE COURT:  Mr. Badway?
 6          MR. BADWAY:  Yes, Your Honor.  In terms of a later
 7  trial date, Mr. Shaw presented to us and in the Court's words,
 8  we tried to work collaboratively.  And now that we know when we
 9  will -- how long the trial will last or where in terms of how
10  much time we have, my only point to the Court is, given my
11  trial schedule and my litigation schedule, the earliest I will
12  be able to have -- and I just did some math, Your Honor.
13  Please correct me on the math.  It's about two weeks now as
14  opposed to four weeks?
15          THE COURT:  Correct.
16          MR. BADWAY:  Give or take a day, the earliest I will
17  have two uninterrupted weeks is going to be the first week of
18  December.
19          THE COURT:  All right.  That would be true -- putting
20  aside the work that is still to be done, are you -- would that
21  be the -- assuming you were ready for trial now, would you be
22  available on the August date, or are you tied up then?
23          MR. BADWAY:  Me?
24          THE COURT:  Yes.
25          MR. BADWAY:  Oh, no, no, no.  I was available for the
```

1  trial, and I can also tell the Court about the survey report.
2  We planned on putting on a rebuttal report from -- we're
3  waiting for Mr. Shaw's report.  We plan on putting in a
4  rebuttal from our witness.  As the Court knows, there is
5  evidence of -- and the Court found evidence of -- direct
6  copying.  One does not need an affirmative survey report.
7            THE COURT:  Okay.
8            MR. BADWAY:  So it's our intention of putting on a
9  rebuttal report.  And I am available for the conference in
10 August, the pretrial conference.
11           THE COURT:  Let me suggest this.  Anything further,
12 Mr. Shaw?
13           MR. SHAW:  This is the first I've heard.  I didn't
14 know -- the expert deadline has closed.  And as the Court will
15 recall, the plaintiff's burden was to put forth proof of
16 secondary meaning, which it didn't do --
17           MR. BADWAY:  Untrue.
18           MR. SHAW:  It had disclosed in August -- this is
19 important though, Your Honor.  I didn't have hear about a
20 rebuttal.  The Court gave us an opportunity to do a secondary
21 meaning survey, and then Mr. Badway --
22           THE COURT:  Slow down, please.  Just slow down,
23 please.
24           MR. SHAW:  He would like to do one as well.  That is
25 what was presented to the Court.

1          THE COURT:  I am not here to resolve issues that
2   haven't yet been presented to me and so on.  We are trying to
3   work practically on the timing of trial.  So what I would like
4   to do, unless you think this would be inefficient, would be to
5   keep the final pretrial conference where it is, late next
6   month.  If you think it would be more efficient to do it at two
7   weeks after that, then let me know.  I would like you to confer
8   prior to that on what potential trial dates would work for you.
9          MR. BADWAY:  Uh-huh.
10         THE COURT:  And, again, if both sides, after
11  conferring in a collaborative way, conclude that it would be
12  more efficient to postpone the final pretrial conference
13  because then you would have a clear idea of what matters remain
14  in dispute, let me know that.  Just submit a joint -- or you
15  can submit a stipulation and proposed order.
16         But my thinking would be, given the number of issues that
17  may be open, I would keep the final pretrial conference in
18  August, that we can then -- by then you'll have a better
19  understanding of potentially what issues remain open or
20  disputed, you'll have better understanding of your respective
21  schedules, and we can talk further at that time.
22         Would that work, Mr. Shaw?
23         MR. SHAW:  Yeah, that would work.  Like I said, it
24  seems they are not available on the current date.  We're happy
25  to confer, keep that pretrial date on calendar, and then we can

```
 1  start working up the pretrial issues pursuant to 60-2 and your
 2  orders.
 3          THE COURT:  And to be clear -- sorry, that's fine.
 4  And to be clear, if you can't do what we need done, if you
 5  can't do a substantial portion of what needs to get done for
 6  the final pretrial conference in time, the two weeks prior to
 7  the final pretrial conference date -- jury instructions,
 8  verdict forms, and other things -- because what the reasons
 9  are, then again confer about that.  If it would be more
10  efficient to do it a little later so those can be done, let me
11  know that.
12      So in other words, make it easy on yourselves here.  Work
13  collaboratively.  Let's do this efficiently.  If I need to
14  convert the August 21 date to a status conference as to what is
15  open and so on, I can do that, too.  But for now I would like
16  to leave it as the final pretrial conference recognizing we
17  don't -- that it may be necessary to have a trial date that is
18  later than is typically after the final pretrial conference.
19      Mr. Badway, that work for you?
20          MR. BADWAY:  That work for us, Your Honor.  Thank you
21  very much.
22          THE COURT:  Okay.  Again, to be clear, I know we
23  agreed to disagree at the present time as to the number of
24  hours but as I've explained, I will have an open mind on that
25  as we go through the process.
```

1     MR. BADWAY:  And, Your Honor, I just want to be clear
2  about one thing.  I think you're absolutely right, the shorter
3  the better.  It's my experience with juries that they don't
4  like to have time wasted.  It's just that I need to get
5  everything out.  That is the only reason I am disagreeing with
6  Your Honor.
7     THE COURT:  That's okay.  We can agree to disagree.
8  It' doesn't hurt -- nothing wrong with that.  Okay.  All right.
9  Thanks for your help today.
10     Oh, finally, have you given up trying to resolve this
11  matter, or would a further session be productive?  Is that
12  something you want to talk about between now and the August
13  date?
14     MR. BADWAY:  We're always open, Your Honor.  From the
15  plaintiff's side, we're always open to more discussions, but we
16  just don't see it settling, Your Honor.
17     THE COURT:  Mr. Shaw?
18     MR. SHAW:  Yeah, agreed.
19     THE COURT:  All right.  Both keep an open mind.  If
20  meeting with a bench officer or some other matter might be
21  productive, especially in light of the schedule that may occur
22  after the August hearing, keep it in mind.  But I recognize
23  that you've given it a lot of thought already.  All right.
24     MR. SHAW:  Thank you, Your Honor.
25     MR. BADWAY:  Thank you, Your Honor.

1    THE COURT: I'll plan to see you in August. Thank
2 you.
3    MR. BADWAY: See you, bye-bye.
4    (Adjourned at 11:02 a.m.)
5                    -oOo-
6
7
8
9
10                 REPORTER'S CERTIFICATE
11
12
13    I certify that the foregoing is a correct transcript of
14 proceedings in the above-entitled matter.
15
16 /s/ Suzanne M. McKennon, CSR, CRR, RMR
   _____    Date: 08/16/2023
17 United States Court Reporter