Scott P. Shaw
SShaw@merchantgould.com
**MERCHANT & GOULD, P.C.**
8383 Wilshire Blvd., Ste. 935
Beverly Hills, CA 90211
Telephone: (949) 330-0202

Attorneys for Defendants and Counterclaim Plaintiffs,
*California Furniture Collection, Inc.*
*d/b/a Robert James Collection and*
*Gina B & Company*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIAIGRE, INC., a Delaware Corporation, | CASE No. 8:19-cv-01160-JAK-KES |
| Plaintiff, Counter-Defendant | **DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANUM OF CONTENTIONS OF LAW AND FACT** |
| vs. | |
| CALIFORNIA FURNITURE COLLECTION, INC. d/b/a ROBERT JAMES COLLECTION, a California Corporation; GINA B & COMPANY, INC., a California Corporation; and DOES 1-10, | Pretrial Conf: January 22, 2024<br>Time: 11:30 a.m.<br>Judge: Honorable John A. Kronstadt<br><br>Trial Date: February 5, 2024 |
| Defendants, Counter-Claimants. | |

# **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION. .................................................................................... 1

II.    CLAIMS, COUNTERCLAIMS, AND DEFENSES [L.R. 16-4.1(A)-(C)]. ................................................................................................... 6

    A.    COPYRIGHT INFRINGEMENT, 17 U.S.C §§101, ET SEQ. .............. 6

    B.    FEDERAL TRADE DRESS INFRINGEMENT, 15 U.S.C. §1125(A). ....................................................................................... 14

    C.    VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §§17200 ET SEQ. ................................................................................................ 33

    D.    COMMON LAW TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION ................................................................ 36

    E.    COUNTERCLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF COPYRIGHTS. ..................................... 38

    F.    COPYRIGHT DAMAGES .................................................................. 41

    G.    TRADE DRESS DAMAGES ............................................................. 44

    H.    AFFIRMATIVE DEFENSES [L.R. 16-4.1(D)] ................................ 47

III.   THIRD PARTY STATEMENTS [L.R. 16-4.1(G)]. ................................ 53

IV.   IDENTIFICATION OF ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)] ............................................................................... 53

V.    BIFURCATION OF ISSUES [L.R. 16-4.3] ............................................ 58

VI.   IDENTIFICATION OF ISSUES TRIABLE TO JURY AND TO COURT [L.R. 16-4.4] ...................................................................... 58

    A.    ISSUES FOR THE JURY. .................................................................. 58

    B.    ISSUES FOR THE COURT. ............................................................... 58

VII.  IMPORTANT ISSUES OF LAW [L.R. 16-4.1(I)]. ............................... 59

VIII. ATTORNEY FEES AND EXCEPTIONALITY [L.R. 16-4.5]. .................... 59

IX.   ABANDONMENT OF ISSUES [L.R. 16-4.6] ........................................ 60

# TABLE OF AUTHORITIES

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
   944 F.2d 1446, 1457 (9th Cir. 1991) .........................................................33, 36

*Accuride Int'l, Inc. v. Accuride Corp.*,
   871 F.2d 1531, 1537 (9th Cir. 1989) ...............................................................31

*Adidas Am., Inc. v. Skechers USA, Inc.*,
   890 F.3d 747, 754 (9th Cir. 2018) ...................................................................19

*Adray v. Adry-Mart, Inc.*,
   76 F.3d 984, 987-88 (9th Cir. 1995) ...................................................14, 19, 20

*A.H. Robins Co. v. Medicine Chest Corp.*,
   1980 WL 30242 (E.D. Miss. 1980) ..................................................................19

*A.J. Canfield Co. v. Concord Beverage Co.*,
   629 F. Supp. 200, 210-212 (E.D. Penn. 1985) ................................................19

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ...........................................................................30

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
   581 F.3d 1138, 1145 (9th Cir. 2009) .........................................................19, 30

*Aurora World, Inc. v. Ty Inc.*,
   719 F. Supp. 2d 1115, 1152 (C.D. Cal. 2009) ..........................................18, 20

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1062, 1072 (9th Cir. 2006) ...............................................................27

*Auto. Data Sols., Inc. v. Directed Elecs. Canada, Inc.*,
   No. CV 18-1560-GW(EX), 2018 WL 4742289, (C.D. Cal. Aug. 15, 2018) ...7

*Bank of Texas v. Com. Sw., Inc.*,
   741 F.2d 785, 789 (5th Cir. 1984) ...................................................................14

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
   963 F.3d 859, 863 (9th Cir. 2020) .............................................................19, 27

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672, 677 (9th Cir. 2005) ...................................................... 31

*Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*,
973 F.2d 1033, 1046 (2d Cir. 1992) .................................................... 31

*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*,
716 F.2d 854, 860 (11th Cir. 1983) .................................................... 20

*Carter–Wallace, Inc. v. Procter & Gamble Co.*,
434 F.2d 794, 802 (9th Cir.1970) ......................................................... 5

*Cleary v. News Corp.*,
30 F.3d 1255, 1262–63 (9th Cir. 1994) .......................................... 33, 36

*Compco Corp. v. Day-Brite Lighting, Inc.*,
376 U.S. 234, 237 (1964) ................................................................... 29

*Continental Lab'y Prod., Inc. v. Medax Int'l, Inc.*,
114 F. Supp. 2d 992, 1000 (S.D. Cal. 2000) ............................ 18, 19, 21

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
No. 14-CV-9270 (RJS), 2016 WL 7507757, (S.D.N.Y. Dec. 30, 2016) ......... 7

*Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*,
448 F.3d 1118, 1124 (9th Cir. 2006) ................................................... 25

*Design Strategy, Inc. v. Davis*,
469 F.3d 284, 295 (2nd Cir. 2006) ................................................. 41, 45

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002, 1006 (9th Cir. 1998) ............................................. 27, 30

*Duraco Prod., Inc. v. Joy Plastic Enters., Ltd.*,
40 F.3d 1431, 1446-47 (3d Cir. 1994) ....................................... 1, 18, 20

*Edge Wireless, LLC v. U.S. Cellular Corp.*,
312 F. Supp. 2d 1325, 1333 (D. Or. 2003) ......................................... 31

*Esquire, Inc. v. Ringer*,
591 F.2d 796, 800 n.12 (D.C. Cir. 1978) .............................................. 1

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND
LAW

*Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*,
 2021 WL 253451, at *2 (3rd Cir. 2001) ...................................................... 1, 21

*Fantasy, Inc. v. Fogerty*,
 94 F.3d 553, 557-60 (9th Cir. 1996) ............................................................. 59

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340, 361 (1991) .......................................................................... 6, 38

*Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*,
 198 F.3d 1143, 1151 (9th Cir. 1999) ............................................................. 19

*First Brands Corp. v. Fred Meyer, Inc.*,
 809 F.2d 1378, 1383 (9th Cir. 1987) ......................................................... 20, 32

*Fogerty v. Fantasy, Inc.*,
 510 U.S. 517, 534 (1994) ............................................................................. 59

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
 826 F.2d 837, 844-45 (9th Cir. 1987) ........................................................... 21

*Glow Indus., Inc. v. Lopez*,
 252 F. Supp.2d 962, 983-84 (C.D. Cal. 2002) ............................................... 19

*Gordon v. Drape Creative, Inc.*,
 909 F.3d 257, 261 (9th Cir. 2018) ................................................................ 51

*Gum, Inc. v. Gumakers of Am.*,
 136 F.2d 957, 960 (3d Cir. 1943) ............................................................ 34, 37

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
 547 F.3d 1213, 1125 (9th Cir. 2008) ............................................................. 25

*Hanover Star Milling Co. v. Metcalf*,
 240 U.S. 403, 416 (1916) ............................................................................. 14

*Hill Collections, Inc. v. Safeway, Inc.*,
 No. CV199570MWFJEMX, 2019 WL 8889998 (C.D. Cal. Dec. 17, 2019) . 25

*Hoffman v. Construction Protective Services, Inc.*,
 541 F.3d 1175, 1179-1180 (9th Cir. 2008) .............................................. 42, 45

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) .......................................... 34, 37

*Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*,
   685 F.2d 78 (3rd Cir. 1982) ........................................................................ 19

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038, 1041 (9th Cir. 2014) ............................................................ 2

*Interactive Health LLC v. King Kong USA, Inc.*,
   No. CV 06-1902-VBF(PLAx), 2008 WL 11337393, at *2 (C.D. Cal. Mar. 6, 2008) ........................................................................................................... 14, 15

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
   4 F.3d 819, 824 (9th Cir. 1993) .................................................................. 19

*Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*,
   456 U.S. 844, 851 n.11 (1982) .......................................................... 5, 14, 17

*James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*,
   No. SACV 11-1309-DOC ANX, 2013 WL 655314, at *9 (C.D. Cal. Feb. 21, 2013) ............................................................................................................. 31

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
   58 F.3d 27, 32 (2d Cir. 1995) ..................................................................... 15

*Jerry's Famous Deli, Inc. v. Papanicolaou*,
   383 F.3d 998, 1005 (9th Cir. 2004) ............................................................ 46

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
   752 F.2d 1326, 1332 (9th Cir. 1984) .......................................................... 43

*Keene Corp. v. Paraflex Industries, Inc.*,
   653 F.2d 822, 824 (3d Cir. 1981) ............................................................... 29

*Kellogg Co. v. Nat'l Biscuit Co.*,
   305 U.S. 111, 121 (1938) ..................................................................... 34, 37

*Kieselstein–Cord v. Accessories by Pearl, Inc.*,
   632 F.2d 989, 994 (2d Cir.1980) .................................................................. 2

*Lahiri v. Universal Music & Video Distrib., Inc.*,
    513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007) ................................. 6, 7, 38

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
    345 F.3d 1140, 1144 (9th Cir. 2003) ............................................... 7

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
    113 F.3d 373, 380 (2d Cir. 1997) ............................................ 14, 15

*Lasercomb America, Inc. v. Reynolds*,
    911 F.2d 970, 977-79 (4th Cir.1990) ............................................ 48

*Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*,
    199 F.3d 1009, 1012-13 (9th Cir. 1999) ...................................... 18

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352, 1354 (9th Cir. 1985) ................................. 17, 18, 57

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400, 1407 (9th Cir. 1993) ............................................ 46

*Lisa Frank, Inc. v. Impact Intern., Inc.*,
    799 F.Supp. 980, 997 (D. Ariz. 1992) ......................................... 57

*Mackie v. Rieser*,
    296 F.3d 909, 911 (9th Cir. 2002) ............................................... 43

*Malovani v. Doe*,
    No. SACV1100787AGMLGX, 2012 WL 12886493, (C.D. Cal. May 14, 2012)
    ................................................................................ 25, 26

*Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*,
    65 F.3d 1053 (2d Cir. 1995) ..................................................... 15

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ..................................................... 30

*Mazer v. Stein*,
    347 U.S. 201 (1954) (No. 228) .................................................... 3

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Metaquotes Ltd. v. Metaquotes Software Corp.*,
No. 8:22-CV-00462-SB-DFM, 2023 WL 3506413, (C.D. Cal. May 17, 2023)
.................................................................................................................. 25

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
817 F.3d 1123, 1128–29 (9th Cir. 2015) ..................................................... 27

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
No. 220CV04556ABJCX, 2021 WL 922074, at *2 (C.D. Cal. Jan. 7, 2021)
............................................................................................................. 25, 26

*MPD Accessories B.V. v. Urban Outfitters*,
No. 12 CIV. 6501 LTS KNF, 2014 WL 2440683, at *5 (S.D.N.Y. May 30,
2014) ..................................................................................................... 7, 11

*Nat'l Ass'n for Healthcare Commc'ns, Inc. v. Cent. Arkansas Area Agency on Aging, Inc.*,
257 F.3d 732, 735 (8th Cir. 2001) ............................................................... 14

*Network Automation, Inc. v. Hewlett-Packard Co.*,
No. CV 08-4675-JFW RZX, 2009 WL 5908719, at *9 (C.D. Cal. Sept. 14,
2009) ........................................................................................................ 31

*Nutrition Distribution LLC v. PEP Rsch.*, LLC,
804 F. App'x 759, 759-60 (9th Cir. 2020) ................................................... 60

*Pagliero v. Wallace China Co.*,
198 F.2d 339, 343 (9th Cir. 1952) ............................................................... 28

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999) *aff'd*, 202 F.3d 278 (9th Cir. 1999)
................................................................................................................ 31

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700, 711 (9th Cir. 2004) ......................................................... 42, 43

*Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*,
121 F.3d 516, 520-21 (9th Cir. 1997) .......................................................... 48

*Qualitex Co. v. Jacobson Prods. Co.*,
514 U.S. 159, 164 (1995) ............................................................................. 1

- vii -
DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND
LAW

*Rise Basketball Skill Dev., LLC*,
   2017 WL 2775030, at *3 ................................................................. 36

*Rogers v. Grimaldi*,
   875 F.2d 994, 999 (2d Cir. 1989) .................................................... 51

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134, 1147 (9th Cir. 1997) ......................................... 34, 37

*Spin Master, Ltd. v. Zobmondo Ent.*, LLC,
   No. CV 06-3459 ABC PLAX, 2011 WL 3714772, at *6 (C.D. Cal. Aug. 22, 2011) .................................................................................................. 25

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
   137 S. Ct. 1002, 1013 (2017) ..........................2, 4, 7, 11, 12, 38, 50

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
   532 U.S. 23, 29 (2001) ...................................................... 1, 4, 20, 27

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763, 768 (1992) ................................................................ 15

*Qualitex Co. v. Jacobson Prods. Co.*,
   514 U.S. 159, 164 (1995) .................................................................. 1

*Wal-Mart Stores, Inc. v. Samara*,
   529 U.S. 205, 214 (2000) .......................................... 1, 5, 14, 17, 18

*Walker & Zanger, Inc. v. Paragon Industries, Inc.*,
   549 F.Supp.2d 1168, 1174 (2007) .............................................. 15, 21

*Walt Disney Prods. v. Air Pirates*,
   581 F.2d 751, 759 (9th Cir. 1978) .................................................. 58

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101, 1101 (9th Cir. 2001) .......................................... 42, 46

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101, 115 (2d Cir. 2001) .................................................... 15

1  **DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MEMORANUM OF**
2  **CONTENTIONS OF FACT AND LAW**

3     Defendants and Counterclaim Plaintiffs submit the following Memorandum of
4  Contentions of Fact and Law pursuant to L.R. 16-4. Defendants and Counterclaim
5  Plaintiffs reserve their rights to amend and/or supplement their contentions of act and
6  law based on the Court's rulings on motions *in limine*, and other pretrial filings.

7  **I.   INTRODUCTION.**

8     This is a product design case. Plaintiff and Counter-defendant alleges that it
9  possesses copyright and trade dress rights in the designs of minimalistic tables, a
10 bench, and a chair (hereinafter referred to collectively as the "Liaigre Furniture"). But
11 patent laws protect product designs. *See Qualitex Co. v. Jacobson Prods. Co.*, 514
12 U.S. 159, 164 (1995) ("It is the province of *patent law, not trademark law*, to
13 encourage invention by granting inventors a monopoly over new product designs or
14 functions for a limited time.") Unlike in Europe, the United States ("US") has never
15 adopted product design protection laws. *Duraco Prod., Inc. v. Joy Plastic Enters.*,
16 Ltd., 40 F.3d 1431, 1446-47 (3d Cir. 1994); *Esquire, Inc. v. Ringer*, 591 F.2d 796,
17 800 n.12 (D.C. Cir. 1978) (observing that since 1914 none of the approximately 70
18 design protection bills introduced in Congress had passed). In fact, the U.S. Supreme
19 Court has repeatedly cautioned about the dangers of extending intellectual property
20 protection for product designs in the absence of a patent due to concerns regarding
21 consumer preference and fair competition. *See Wal-Mart Stores, Inc. v. Samara*, 529
22 U.S. 205, 214 (2000) ("Consumers should not be deprived of the benefits of
23 competition with regard to the [] esthetic purposes that product design ordinarily
24 serves by a rule of law that facilitates plausible threats of suit against new entrants
25 based upon alleged inherent distinctiveness."); *TrafFix Devices, Inc. v. Marketing
26 Displays, Inc.*, 532 U.S. 23, 29 (2001) ("Allowing competitors to copy will have
27 salutary effects in many instances"); *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am.
28 Corp.*, 2021 WL 253451, at *2 (3rd Cir. 2001) ("Copying is usually legal. It is part of

1  market competition."); McCarthy on Trademarks and Unfair Competition § 8:9
2  ("[C]opying [product designs] is not only permitted but is encouraged as an essential
3  ingredient of free competition.").

4      It is inappropriate for the judiciary to protect unregistered foreign furniture
5  products under United States ("U.S.") law in this case. The Liaigre Furniture does not
6  qualify for any intellectual property protection according to very well-established case
7  law, and according to the U.S. Copyright and Trademark Offices. Furthermore, it is
8  widely accepted by intellectual property scholars that the copyright and trademark
9  laws are not intended to protect product designs. Patents protect product designs. The
10  framers of the constitution knew this when they recognized legal monopolies for
11  patents for a limited duration. Moreover, Congress has known this for nearly 100
12  years and has consistently declined to protect product designs under copyright and
13  trademark laws.

14      There is no copyright protection for furniture products. This Court has failed to
15  give appropriate deference to U.S. Supreme Court precedent and the Copyright
16  Office's well-reasoned application of U.S. Supreme Court precedent that "classic"
17  useful articles (such as furniture) are simply not protectable under the Copyright Act.[1]

18  _____

19  [1] The Copyright Office Compendium correctly interprets the Copyright Act and the
20  *Star Athletica* separability test, and its analysis is lengthy and extremely well-
21  reasoned. The express language of the Copyright Act and the U.S. Supreme Court
   case law forbid copyright protection for furniture items. Furthermore, the Ninth
22  Circuit has stated that it defers to the "Copyright Office's interpretations in the
   appropriate circumstances." *See Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038,
23  1041 (9th Cir. 2014); *see also Kieselstein–Cord v. Accessories by Pearl, Inc.,* 632
24  F.2d 989, 994 (2d Cir.1980) ("The Copyright Office continually engages in the
   drawing of lines between that which may be and that which may not
25  be copyrighted."). This case is one where the Court should refer to the Copyright
26  Office Compendium because it is directly on point. Here, the Copyright Office
   Compendium includes an entire well-reasoned section on separating the design
27  feature from the useful article with citations to the *Star Athletica* opinion:
28      (footnote continued)

**924.3(E) Separating the Design Feature from the Useful Article.**

To satisfy the separability test, an artistic feature must "qualify as a nonuseful pictorial, graphic, or sculptural work on its own." *Star Athletica*, 137 S. Ct. at 1013. "In other words, the feature must be able to exist as its own pictorial, graphic, or sculptural work . . . once it is imagined apart from the useful article." *Id.* at 1010. When applying this test, the U.S. Copyright Office focuses "on the extracted feature and not on any aspects of the useful article that remain after the imaginary extraction." *Id.* at 1013. **This means that "some aspects of the useful article" must be "left behind" once the artistic feature has been "conceptually removed" from that item for copyright protection to apply. Id. at 1014 (internal quotation marks omitted). It also means that the overall form, shape, or configuration of a useful article cannot be protected by copyright.** *Id.* **at 1010, 1014.** To be clear, the "imagined remainder" does not need to "be a fully functioning useful article" or an "equally useful" article. *Id.* In other words, the Office does not need to imagine a fully functioning useful article "without the artistic feature." *Id.* at 1013. Nor does it need to "imagine a nonartistic replacement for the removed feature" to determine if that feature is capable of existing apart from the article. *Id.* at 1014. **But to satisfy the separability test, at least some portion of the useful article must remain in the viewer's mind after the artistic feature has been imaginatively removed from the article. For example, a decorative carving on the back of a chair can be imagined apart from the utilitarian aspects of the chair itself, because at least some portion of the useful article would be left behind, namely, the back, seat, arms, and legs. By contrast, the overall shape of the chair cannot be imagined apart from the item itself, because it "does not have the capacity to exist apart from the utilitarian aspects" of that item.** *Id.* **Nor does it have the capacity to exist "on its own" as a sculptural work.** *Id.* at 1013. See generally H.R. REP. NO. 94-1476, at 55 (citing a carving on the back of a chair as an example of a separable feature of a useful article), reprinted in 1976 U.S.C.C.A.N. at 5668; Transcript of Oral Argument at 72-73, *Mazer v. Stein*, 347 U.S. 201 (1954) (No. 228) (distinguishing between a piece of furniture and an ornate carving on furniture).

(*See* https://www.copyright.gov/comp3/chap900/ch900-visual-art.pdf) (Emphasis added).

17 U.S.C. § 101; *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1013 (2017) (reasoning the overall shape is unprotectable by copyright law, and the alleged "separate" feature cannot itself be a useful article – *i.e.,* it cannot be a piece of or part of furniture). The law only permits copyright protection for features of a useful article that are conceptually separable (*i.e.,* non-useful features that one can conceptually remove). *Star Athletica*, 137 S. Ct. at 1010. For example, "[a] carving on the back of a chair" is a separate feature that is not itself a useful article or part of a useful article, so the artistic carving is protectable because conceptually it can be removed and stand alone as copyrightable subject matter. *Id.* However, shapes of useful articles such as furniture or their normal parts are never conceptually separable and never protectable as copyrightable subject matter. *Id.* at 1013. The Supreme Court has held that if the alleged conceptually separable feature is itself a useful article, then it cannot be non-useful copyrightable subject matter. *Id.* at 1110. So, as applied here, any normal parts of the Liaigre Furniture (*e.g.,* legs) are not copyrightable separable "features" as a matter of law. These alleged "features" are, by statutory definition, useful articles. The Court already determined the Liaigre Furniture products themselves are useful articles, but it left the question of conceptual separability for the jury as to parts of the furniture. If the Court at least provides appropriate jury instructions on the law regarding conceptual separability, the jury should easily find there is no copyright protection for the Liaigre Furniture.

There is also no trade dress protection for the Liaigre Furniture. Despite Plaintiff and Counter-defendant's repeated ignorance of and/or resistance to binding law (*e.g.,* **never once** has Plaintiff and Counter-defendant cited to *Walmart* or discussed it), product designs are *never inherently distinctive. See id.* at 216; 1 McCarthy on Trademarks and Unfair Competition ("McCarthy") § 8:12 (5th ed.). The U.S. Supreme Court held that a plaintiff seeking product design trade dress protection must satisfy the *very high burden* to prove "*acquired distinctiveness,*" which is referred to as "secondary meaning." *Id.*; *see also* McCarthy on Trademarks § 8:8.50

("the proponent of a secondary meaning in product design trade dress faces a formidable burden of proof"). "To establish secondary meaning, a manufacturer must show that, "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851 n.11 (1982) (emphasis added). It takes significant time and effort to create a secondary meaning in the minds of the public to associate with a single source. *Carter–Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 802 (9th Cir.1970) ("The test of secondary meaning is the effectiveness of the effort to create it . . ."). Thus, source-identification is the cornerstone of trademark and trade dress law, but it almost never exists in product designs, because "*product design almost invariably serves purposes <u>other than</u> source identification*." *Id.* (emphasis added). Unless the product design serves the <u>*primary purpose*</u> of indicating to the public that only a single company makes it, there is no "trade dress," and it is subject to copying. *See TrafFix*, 532 U.S. at 29.

Plaintiff and Counter-defendant does not possess any direct evidence of secondary meaning, and when asked in an interrogatory to provide details, the Plaintiff and Counter-defendant merely rested on its theory of inherent distinctiveness. To be clear, Plaintiff and Counter-defendant failed to offer any direct consumer testimony or a survey to support secondary meaning. On the other hand, although it is not Defendants and Counterclaim Plaintiffs' burden, they have offered various surveys to show the lack of secondary meaning. In addition, the lack of secondary meaning for the Liaigre Furniture is obvious, in part, because the sales numbers are absurdly low. The Lanham Act allows protection for trade dress only where the trade dress has acquired distinctiveness in the marketplace over years of substantial sales. *Wal-Mart*, 529 U.S. at 209. There is simply no basis in fact or law for different items of minimalistic furniture to achieve source-recognition, and if the Liaigre did obtain secondary meaning it would only exist in a universe of .000000001% of the population who would never confuse any furniture as being

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  associated with Liaigre.

2  In short, Defendants and Counterclaim Plaintiffs maintain that this case is

3  frivolous, and they are entitled to recover fees from Plaintiff and Counter-defendant.

4  ## II.    <u>CLAIMS, COUNTERCLAIMS, AND DEFENSES [L.R. 16-4.1(A)-(C)]</u>

5  Below is a summary of the claims at issue in the case for trial, along with a

6  summary of key evidence in support of Defendants and Counterclaim Plaintiffs' case.

7  However, this is not intended to be an exhaustive summary of all such evidence.

8  Defendants and Counterclaim Plaintiffs recognize that some of the legal and factual

9  contentions may not be issues for trial, depending on the Court's rulings on *motions*

10  *in limine*.

11  ### A. Copyright Infringement, 17 U.S.C §§101, et seq.

12  ### 1.    Elements of Copyright Infringement

13  To establish this claim, Plaintiff and Counter-defendant must prove by a

14  preponderance of the evidence that the Plaintiff and Counter-defendant is the owner[2]

15  of a valid copyright and the Defendants and Counterclaim Plaintiffs copied original

16  expression from the copyrighted work. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*,

17  499 U.S. 340, 361 (1991); Ninth Circuit Manual of Model Civil Jury Instructions §

18  17.5. The first requirement involves two inquires: (a) whether Plaintiff and Counter-

19  defendant can prove that it or its parent company Liaigre France owns copyrights

20  under French law, and (b) whether the Liaigre Furniture contain protectable features

21  under US copyright law. *Lahiri v. Universal Music & Video Distrib., Inc.*, 513 F.

22  Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007) (When a plaintiff alleges copyright

23  _____

24  [2] Pursuant to prior filings, Defendants and Counterclaim Plaintiffs reserve their rights

25  to appeal the Court's decision regarding Plaintiff and Counter-defendant's standing to sue under the Copyright Act as an exclusive licensee because Plaintiff and Counter-

26  defendant failed to meet the writing requirement. (Defs. & Countercl. Pls.' Mot. Summ. J., ECF No. 97-1 at 28-31); (Defs. & Countercl. Pls.' Mem. P. & A. Opp'n Pl.

27  & Counter Def.'s Mot. Summ. J., ECF No. 111 at 31-33).

28

1   infringement of a foreign work in the US, "[i]nitial ownership of a copyrighted work

2   is determined by the laws in the work's country of origin."); *Star Athletica*, 137 S. Ct.

3   at 1008 ("A valid copyright extends only to copyrightable subject matter.").

4                    **(a)    Ownership Under French Law**

5          Plaintiff and Counter-defendant has the burden of proving ownership. Ninth

6   Circuit Manual of Model Civil Jury Instructions § 17.5 Comment ("Under the

7   Copyright Act, the party claiming infringement must show ownership.") (citing

8   *Lamps Plus, Inc. v. Seattle Lighting Fixture Co*., 345 F.3d 1140, 1144 (9th Cir. 2003)).

9          The Berne Convention Implementation Act ("Berne Convention"), 17 U.S.C.

10   §§ 101, *et seq*., "allows owners of unregistered foreign copyrights from Berne

11   Convention signatory nations to bring claims of copyright infringement in United

12   States courts." *MPD Accessories B.V. v. Urban Outfitters*, No. 12 CIV. 6501 LTS

13   KNF, 2014 WL 2440683, at *5 (S.D.N.Y. May 30, 2014); *see also Auto. Data Sols.,*

14   *Inc. v. Directed Elecs. Canada, Inc.*, No. CV 18-1560-GW(EX), 2018 WL 4742289,

15   at *6 (C.D. Cal. Aug. 15, 2018) ("owners of a foreign copyright under the Berne

16   Convention can enforce protections guaranteed under United States copyright law.").

17   "As a general matter, the law of the jurisdiction where an artistic work is 'created'

18   and 'first published' governs issues concerning copyright *ownership*," *Creazioni*

19   *Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-CV-9270 (RJS), 2016 WL

20   7507757, at *3 (S.D.N.Y. Dec. 30, 2016) (emphasis in original); *see also Lahiri*, 513

21   F. Supp. 2d at 1176 ("Initial ownership of a copyrighted work is determined by the

22   laws in the work's country of origin."). Thus, ownership of the claimed copyright is

23   governed by French law.

24          To the extent there is a presumption of ownership under French law, the

25

26

27

28

---

**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

presumption is rebuttable.[3] *See* J.A.L. Sterling, *World Copyright Law* § 5.09 (4th ed. 2015) (noting that the presumption applies "in default of contrary proof"); 1 Silke von Lewinski, *Copyright Throughout the World* § 15:18 (2008 & Supp. 2022) (calling this a "rebuttable presumption"). Defendants and Counterclaim Plaintiffs may rebut the presumption by demonstrating there is doubt regarding whether the Liaigre Furniture are "collective works" created at the initiative of Liaigre France. For example, as the Court correctly recognized int is Order on Summary Judgment, evidence that one piece of claimed Liaigre Furniture was created by a non-employee who retained rights in the work demonstrates that it was not a collective work created at the initiative of Liaigre France. Doubt as to the ownership of one piece of Liaigre Furniture serves as circumstantial evidence that the other pieces of Liaigre Furniture are also not collective works created at the initiative of Liaigre France. Once the presumption is rebutted, as it has been here, the Plaintiff and Counter-defendant bears the burden of proving that it owns the Liaigre Furniture as "collective works" under French law.

Under French law, a "work of collaboration" is "a work in the creation of which more than one natural person has participated . . . and shall be the joint property of its authors. Code de la propriété intellectuelle [Intellectual Property Code] Article L113-2, Article L113-3(Fr.). In contrast, "[a] collective work shall be the property, unless proved otherwise, of the natural or legal person under whose name it has been disclosed" and is defined as follows:

> [A] work created at the initiative of a natural or legal person

---

[3] Pursuant to prior filings, Defendants and Counterclaim Plaintiffs reserve their rights to appeal the Court's decision as a matter of law, because the French presumption is a procedural rule reserved only for legal proceedings in French courts and it cannot replace the legal requirements for proving ownership or apply in a US Court to substantively prove ownership. (Binctin Opening Report, ECF No. 97-51 at 16-19); (Binctin Decl. Supp. Defs. & Countercl. Pls.' Mot. Summ. J., ECF No. 97-50 at 4, 17-19).

1   who edits it, publishes it and discloses it under his direction
2   and name and in which the personal contributions of the
3   various authors who participated in its production are
4   merged in the overall work for which they were conceived,
5   without it being possible to attribute to each author a sperate
6   right in the work as created.

7   Code de la propriété intellectuelle [Intellectual Property Code] Article L113-2,
8   Article L113-5(Fr.). To prove the works are "collective works" created at the initiative
9   of Liaigre France rather than "works of collaboration," Plaintiff and Counter-
10  defendant must answer three critical questions: *First,* who is the person upon whose
11  initiative the Liaigre Furniture was created? *Second,* what were the contributions of
12  the various authors? *Third,* what did the initiating person do to direct the creative
13  process? Code de la propriété intellectuelle [Intellectual Property Code] Article L113-
14  2(Fr.). *See* Cour d'appel de de Paris, Nov. 8, 2016, RG n° 15/09275; *see also*, Cass.
15  com., Dec. 19, 2013, n° 12-26409, *op. cit.* Without answers to these questions, it is
16  factually impossible to distinguish a "collective work" from a "work of
17  collaboration."

18      Because Plaintiff and Counter-defendant cannot establish ownership under
19  French law, they cannot maintain a copyright claim in the U.S. Although Defendants
20  and Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant will not be
21  able to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs
22  are nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's
23  allegations.  Below is the key evidence that Defendants and Counterclaim Plaintiffs
24  intend to rely on, but it is not intended to be an exhaustive summary of all such
25  evidence.

26              **(i)      Key Evidence.**

27      Defendants and Counterclaim Plaintiffs' key evidence against Plaintiff and
28  Counter-defendant's claim of copyright ownership is set forth below.

1.    Defendants and Counterclaim Plaintiffs will offer the following evidence to support their contentions on the issue:

   a.  Testimony

      i.  Plaintiff and Counter-defendant's 30(b)(6) deposition testimony by Christophe Caillaud regarding lack of evidence of ownership of a collective work, and testimony that Eric Schmitt who was not a Liaigre France employee created and owns the intellectual property rights in the Bomarzo Table and he did not transfer ownership rights to Liaigre France.

      ii.  Frauke Meyer regarding lack of evidence of ownership of a collective work.

      iii.  Thais Roda regarding lack of evidence of ownership of a collective work.

      iv.  Guillaume Rolland regarding lack of evidence of ownership of a collective work.

   b.  Exhibits

      i.  Plaintiff and Counter-defendant's second supplemental response to Defendants and Counterclaim Plaintiffs' Request For Production No. 22 showing Plaintiff and Counter-defendant did not produce any documents evidencing a transfer of rights from Eric Schmitt to Liaigre France for the Bomarzo table.

      ii.  Plaintiff and Counter-defendant's responses to Defendants and Counterclaim Plaintiffs' Interrogatories, Set One No. 04.

      iii.  Letter from Eric Schmitt to Liaigre France. (ECF No. 98-77).

**2.    (b)   Validity of Copyright Under U.S. Law**

U.S. law applies to the issue of the validity of foreign copyrights and Plaintiff and Counter-defendant bears the burden of or proving validity of the copyright. 17

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

U.S.C. § 104(c); *see* Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 Because Plaintiff and Counter-defendant does not have a registration from the U.S. Copyright Office, there is no prima facie presumption of the validity of the copyright.[4] 17 U.S.C. § 104(c). Therefore, Plaintiff and Counter-defendant bears the burden of proving the Liaigre Furniture is copyrightable subject matter. *Id.* at 1033.

Useful articles are not copyrightable under US law. *See* 17 U.S.C. § 101; *Star Athletica*, 137 S. Ct. at 1013 (2017) (reasoning the overall shape is unprotectable by copyright law). And, the Copyright Act, by definition, provides that "[a]n article that is normally a part of a useful article is considered a 'useful article' [*e.g.,* legs on a chair]." 17 U.S.C. § 101 (defining "useful article"). Further, although the Copyright Act provides that sculptural works are copyrightable (17 U.S.C. § 102(a)), "the feature *cannot itself be a useful article*," so, by definition, if a product design (or part thereof) is a useful article (*e.g.,* an entire piece or any normal part of furniture)[5], that useful

---

[4] An owner of a US work must file for copyright registration with the U.S. Copyright Office before they may bring a civil action for copyright infringement; however, this requirement does not apply for foreign copyrights. 17 U.S.C. § 411(a); *MPD Accessories B.V.*, 2014 WL 2440683, at *5 ("The Berne Convention Implementation Act allows owners of unregistered foreign copyrights from Berne Convention signatory nations to bring claims of copyright infringement in United States courts."). However, the Berne Convention is not a self-executing treaty that is meant to be used as a loophole for foreign copyright holders to obtain greater protection than is afforded to U.S. copyright owners. But to be perfectly blunt, this is precisely what Plaintiff and Counter-defendant are attempting to do in this case because they cannot obtain a US copyright registration. And the Court is allowing Plaintiff and Counter-defendant to skirt the U.S. Copyright Office and defy Congress by seeking a monopoly over product design under the guise of "copyright" law.

[5] The jury must be allowed to determine factually whether any of the claimed "features" are normal parts of furniture, because if so, then these alleged "features" are useful articles. Features that are not normally part of furniture are a sculpture of a Balinese dancer, a design of a cat, attached wings or decorative designs, or any type of artistic design that is not itself a part of furniture. These examples are all
(footnote continued)

1 article can never transform itself into copyrightable subject matter as a matter of law.

2 *Star Athletica,* 137 S. Ct. at 1010 (*citing* 17 U.S.C. § 101). Finally, a pictorial, graphic,

3 or sculptural *feature* incorporated into the design of a useful article is copyrightable

4 only where it "can be identified separately from," and is "capable of existing

5 independently of, the utilitarian aspects of the article." 17 U.S.C. § 101.

6       As *Star Athletica* stated: "The first requirement—separate identification—is

7 not onerous. The decision maker need only be able to look at the useful article and

8 spot some two- or three- dimensional element that appears to have pictorial, graphic,

9 or sculptural qualities." 137 S. Ct. at 1010. By contrast, "[t]he independent existence-

10 requirement is ordinarily more difficult to satisfy. The decisionmaker must determine

11 that the separately identified feature has the capacity to exist apart from the utilitarian

12 aspects of the article." *Id.*  A feature that is a useful article itself or is normally part of

13 a useful article does not pass the separability test. *Id.* Just as a shape of a cheerleading

14 uniform itself is not copyrightable, the shape of furniture or normal parts of furniture

15 are not copyrightable as a matter of law. *See id.* at 1012-13 (granting copyright

16 protection but <u>*only to printed artwork*</u> and <u>*not to the overall configuration of a*</u>

17 <u>*cheerleading uniform*</u>). This is so because three-dimensional product designs are more

18 likely to "replicate" in whole or in part the useful article from which they have been

19 separated, and therefore remain unprotectable. *See id.* at 1012 (explaining that if the

20 design is imagined separately but merely replicates the useful article, then it is not

21 separable or protectable under copyright law); *see also supra* at fn. 1.

22       Because Plaintiff and Counter-defendant cannot establish that the Liaigre

23 Furniture is copyrightable subject matter, they cannot maintain a copyright claim.

24 Although Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-

25

26 _____

27 copyrightable features because they are not normally parts of the actual furniture (*i.e.,*

28 they are not "useful articles," as defined by statute.)

defendant will not be able to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's allegations. Below is the key evidence that Defendants and Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive summary of all such evidence.

### (i)   Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence refuting validity of copyright includes the following:

1.  Testimony

    a.  Lance Rake regarding functionality of Liaigre Furniture.

    b.  Erik Vogt regarding usefulness of furniture, normal parts of furniture, and copyright applications for Robert James Collection furniture.

    c.  Rob Hendricks regarding usefulness of furniture and normal parts of furniture.

    d.  Robert Spurlock regarding usefulness of furniture and normal parts of furniture.

2.  Exhibits

    a.  Images of the Liaigre Furniture. (TL000134-00135, TL000158-000159, TL000167-000168, TL000115, TL000098-000099, TL000106, PLA_002345, TL000148-000149, PLA_002368, TL000183-000184, TL000123-000125, PLA002381).

    b.  Images of the Robert James Collection furniture at issue. (CAL000062, CAL000079, CAL000020, CAL000033, CAL000010, CAL000012, CAL000050, CAL000056, CAL000065, CAL000067).

    c.  US Copyright Office applications and rejections of applications to register the Robert James Collection furniture. (ECF No. 134-3 at 2-26).

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## B. Federal Trade Dress Infringement, 15 U.S.C. §1125(a).

### 1. Elements of Claim

To establish this claim, Plaintiff and Counter-defendant must prove by a preponderance of the evidence that: (i) the trade dress is not generic and is described with particularity; (ii) has acquired distinctiveness; (iii) Plaintiff and Counter-defendant owns the trade dress; (iv) the trade dress is nonfunctional; and (v) the Defendants and Counterclaim Plaintiffs used Plaintiff and Counter-defendant's trade dress without the consent of the Plaintiff and Counter-defendant in a manner that is likely to cause confusion among relevant consumers as to the source, sponsorship, affiliation, or approval of the plaintiff's goods. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.7; *Wal-Mart*, 529 U.S. at 214. Finally, for unregistered trade dress, the Plaintiff has the burden to prove market penetration in each geographic region. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987-88 (9th Cir. 1995) (plaintiff was only entitled to trademark protection in the geographic areas where it established secondary meaning), *as amended on denial of reh'g* (Feb. 15, 1996) *Bank of Texas v. Com. Sw., Inc.*, 741 F.2d 785, 789 (5th Cir. 1984) (finding in favor of the defendant because the plaintiff failed to meet the burden of proving secondary meaning, and therefore a protectable interest, in [its mark] in the entire area [claimed as its trade area]); *Nat'l Ass'n for Healthcare Commc'ns, Inc. v. Cent. Arkansas Area Agency on Aging, Inc.*, 257 F.3d 732, 735 (8th Cir. 2001) (quoting *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 416 (1916)) ("The rationale is a core principle of trademark law: the owner of a mark may not 'monopolize markets that his trade has never reached and where the mark signifies not his goods but those of another.'").

### (a) Genericness

Trade dress excludes "ordinary product design" because extending protection to the design as a whole "would create a monopoly in the goods themselves." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997); *see also Inwood Labs, ,* 456 U.S. at 851 n.11 (1982) ("To establish secondary

- 14 –

meaning, a manufacturer must show that, "in the minds of the public, the primary significance of a product feature … is to identify the source of the product rather than the product itself."); *Interactive Health LLC v. King Kong USA, Inc.*, No. CV 06-1902-VBF(PLAx), 2008 WL 11337393, at *2 (C.D. Cal. Mar. 6, 2008) ("Courts have exercised caution when extending trade dress protection to product designs, as they present an 'acute risk' of stifling competition."). Concerns of imprecise trade dress definitions include the risk that jurors will interpret the same trade dress differently, the possibility that jurors or courts will be unable to determine functionality or secondary meaning, the likely overbreadth of the trade dress claim, and the difficulty in crafting narrowly-tailored injunctive relief. *See Interactive Health*, 2008 WL 11337393, at *2 (citations omitted). Courts do not protect "an idea or concept" if it "is too broad or too general to warrant protection." *Landscape Forms*, 113 F.3d at 380. There is a risk that "overextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas." *Id.* Further, "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Id.* at 381.

For these reasons, trade dress must be described with particularity because "generic product designs are unprotectable even upon a showing of secondary meaning." *Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F.Supp.2d 1168, 1174 (2007); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (noting that "generic marks—those that refer to the genus of which the particular product is a species … [citation]—are not registrable as trademarks") (internal quotation marks and citations omitted). What constitutes "genericness" may refer to three separate scenarios: (1) if the definition of a product design is overbroad or too generalized; (2) if a product design is the basic form of a type of product; (3) if the product design is so common in the industry that it cannot be said to identify a particular source. *See Walker*, 549 F.Supp.2d at 1174 (citing *Jeffrey Milstein, Inc. v.*

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001); *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1053 (2d Cir. 1995)).

Because Plaintiff and Counter-defendant's alleged trade dress definitions in the Liaigre Furniture are generic, they cannot receive trade dress protection. Plaintiff and Counter-defendant's trade dress definitions for the Liaigre Furniture are vastly overbroad, and instead of precise source-identifying characteristics, the definitions are based on various inspiration or historical references and/or aesthetics. Although Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant will not be able to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's allegations.  Below is the key evidence that Defendants and Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive summary of all such evidence.

### (i)    Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence refuting acquired distinctiveness includes the following:

1. Testimony
   a. Christophe Caillaud regarding the trade dress definitions of the Liaigre Furniture.
2. Exhibits
   a. Plaintiff and Counter-defendant's supplemental response to interrogatory No. 7. (Plaintiff and Counter-Defendant Liaigre Inc's First Supplemental Responses and Written Objections to Defendant California Furniture Collection, Inc.'s Interrogatories, Set One).
   b. Images of Liaigre Furniture (PLA_00245, PLA_002354, TL000167-00168, TL00158-00159, TL00167-0168,

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

TL000115  TL000098-000099,  TL000106,  PLA_002345, PLA_002368, TL000183-000184, TL000123-000125, PLA_002381, Gentile Deposition Exh. 3).

c.  Demonstrative exhibit depicting the Bomarzo Side Table with the Plaintiff and Counter-defendant's trade dress definition.

d.  Demonstrative exhibit depicting the Calme Plat Bench with the Plaintiff and Counter-defendant's trade dress definition.

e.  Demonstrative exhibit depicting the Centaure Table with the Plaintiff and Counter-defendant's trade dress definition.

f.  Demonstrative exhibit depicting the Corvette Desk with the Plaintiff and Counter-defendant's trade dress definition.

g.  Demonstrative exhibit depicting the Galion Console with the Plaintiff and Counter-defendant's trade dress definition.

h.  Demonstrative exhibit depicting the Maritime Chair with the Plaintiff and Counter-defendant's trade dress definition.

i.  Demonstrative exhibit depicting the Misaine Table with the Plaintiff and Counter-defendant's trade dress definition.

j.  Demonstrative exhibit depicting the Somaria Table with the Plaintiff and Counter-defendant's trade dress definition.

**(b)  Acquired Distinctiveness**

Product-design trade dress is never inherently distinctive; therefore, to prevail on its trade dress claim, Plaintiff and Counter-defendant bears the heavy burden of proving that the Liaigre Furniture has achieved a secondary meaning. *Wal-Mart*, 529 U.S. at 214-16. Proof of secondary meaning requires evidence that a substantial segment of consumers have a mental association between the Plaintiff and Counter-defendant's alleged trade dress and Plaintiff and Counter-defendant as the source. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985). Further,

1  "a manufacturer must show that, in the minds of the public, the primary significance

2  of a product feature or term is to identify the source of the product rather than the

3  product itself." *Inwood*, 456 U.S. at 851 n.11. Accordingly, Plaintiff and Counter-

4  defendant bears the very high burden to prove that some feature(s) of the Liaigre

5  Furniture have a acquired a "secondary meaning" as source-identifying, and to

6  overcome the strong presumption that product designs are generally not protectable

7  under trade dress law.[6] *See Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1152

8  (C.D. Cal. 2009) (recognizing the secondary meaning "standard appears to be higher

9  in the case of a product design").

10  Direct evidence, in the form of consumer surveys and direct consumer

11  testimony, provide the strongest evidence of secondary meaning. *Levi Strauss,* 778

12  F.2d at 1338 ("An expert survey of purchasers can provide the most persuasive

13  evidence of secondary meaning."); *Continental Lab'y Prod., Inc. v. Medax Int'l, Inc.*,

14  114 F. Supp. 2d 992, 1000 (S.D. Cal. 2000). However, such direct evidence only

15  exists if the direct consumer testimony or survey shows that a "*substantial segment*

16  of consumers and potential consumers" associate the alleged trade dress with a single

17  source of the product. *See Levi Strauss*, 778 F.2d at 1354.

18  In the absence of direct evidence, the following circumstantial evidence is

19  relevant for determining secondary meaning: exclusivity and length of use,

20  sales/advertising, and other factors that would allow the public to view the asserted

21  "trade dress" with a single source of origin. *See Continental*, 114 F. Supp. 2d at 999-

22  1000. Where circumstantial evidence is used, the Plaintiff and Counter-defendant

23  _____

24  [6] Other forms of intellectual property are available for product designs, and since trade

25  dress protection "may hinder legitimate competition for product designs, the Ninth Circuit has advised district courts to evaluate such claims with greater scrutiny than

26  claims involving other forms of trade dress." *Continental*, 114 F.Supp.2d at 1003

27  (citing *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1012-13 (9th Cir. 1999).

28

1    must draw a connection between the factor and source identification since any *alleged*

2    market success may well be attributable to the desirability of the products rather than

3    any alleged secondary meaning. *See Duraco*, 40 F.3d at 1452-54 (rejecting product

4    design trade dress and bare evidence of sales, advertising, and length of use when not

5    connected to source-identification); *see also Wal-Mart*, 529 U.S. at 212 (recognizing

6    that consumers are attracted to product design for its features not source-

7    identification); *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir.

8    1993) ("While evidence of a manufacturer's sales, advertising and promotional

9    activities may be relevant in determining secondary meaning, the true test of

10   secondary meaning is the effectiveness of this effort to create it.").

11       Substantial sales of products over time may be used to support a finding of

12   secondary meaning. *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198

13   F.3d 1143, 1151 (9th Cir. 1999) (amount of sales and number of customers are

14   relevant to determine secondary meaning); *Art Attacks Ink, LLC v. MGA Ent. Inc.*,

15   581 F.3d 1138, 1145 (9th Cir. 2009); *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d

16   747, 754 (9th Cir. 2018). Sales must be of a magnitude high enough to expose a

17   substantial number of consumers to the trade dress. *See, e.g., Adidas*, 890 F.3d at 752

18   (40 million pairs of shoes sold); *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963

19   F.3d 859, 863 (9th Cir. 2020) (6.5 million chairs sold); *Ideal Toy Corp. v. Plawner*

20   *Toy Mfg. Corp.*, 685 F.2d 78 (3rd Cir. 1982) (51 million Rubik's Cubes sold); *A.H.*

21   *Robins Co. v. Medicine Chest Corp.*, 1980 WL 30242 (E.D. Miss. 1980) (3.5 billion

22   products sold). However, sales figures alone are not enough to establish secondary

23   meaning particularly in a product design trade dress case because "market success

24   may well be attributable to the desirability of the product configuration rather than

25   the source-designating capacity of the supposedly distinguishing feature or

26   combination of features." *Continental*, 114 F. Supp. 2d at 1002-03.

27       Even if there are substantial sales, national market penetration is still required

28   for proving secondary meaning. *See Adray*, 76 F.3d at 987-88 (plaintiff was only

- 19 -

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

1   entitled to trademark protection in the geographic areas where it established secondary

2   meaning), *see also A.J. Canfield Co. v. Concord Beverage Co.*, 629 F. Supp. 200,

3   210-212 (E.D. Penn. 1985) (requiring sufficient market penetration in the

4   geographical areas where a plaintiff seeks secondary meaning and recognizing that

5   secondary meaning cannot exist in areas where plaintiff did not penetrate); *see also*

6   *Glow Indus., Inc. v. Lopez*, 252 F. Supp.2d 962, 983-84 (C.D. Cal. 2002) (recognizing

7   that a plaintiff seeking unregistered trademark rights must provide evidence that its

8   mark has penetrated in each geographic area, or that it has acquired a national

9   reputation). "The extent of market penetration depends upon the volume of sales, the

10  positive and negative growth trends, the number of people who purchased the party's

11  goods in relation to the number of potential customers, and the amount of

12  advertising." *Adray*, 76 F.3d at 989.

13       Additionally, extensive nationwide advertising over time can support a finding

14  of secondary meaning if there is connection with source-identification. *First Brands*

15  *Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (citing *Brooks Shoe*

16  *Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983)) ("[A]ds must

17  feature in some way the trade dress itself . . . [o]therwise even evidence of extensive

18  advertising or other promotional efforts would not necessarily indicate that

19  prospective buyers would associate the trade dress with a particular source."); *Aurora*

20  *World, Inc.*, 719 F. Supp. 2d at 1153; *see also* McCarthy § 8:8.50 ("Secondary

21  meaning cannot be proven by advertising that merely pictures the claimed trade dress

22  and does nothing to emphasize it or call attention to it."). Such connection is

23  established where "look for" advertising is used highlighting the identifying feature

24  of the trade dress. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d at 1383 (citing

25  *Brooks*, 716 F.2d at 860) ("[A]dvertising and promotional activities must involve

26  "image advertising," that is, the ads must feature in some way the trade dress itself.");

27  *Duraco*, 40 F.3d at 1452 ("[A]dvertising expenditures, measured primarily with

28  regard to those advertisements which highlight the supposedly distinctive, identifying

1  feature" of the trade dress.) *See* McCarthy§ 8:8.50 ("For example: 'Look for the red
2  and green star on the side of the shoe!' The purpose is to promote in viewers' minds
3  an association between that trade dress feature and a single source.").

4      "As the [Supreme] Court has explained, copying is not always discouraged or
5  disfavored by the laws which preserve our competitive economy." *TrafFix*, 532 U.S.
6  at 29. Copying product designs is typically allowed and encouraged to promote
7  competition. *See, e.g., id.* ("Trade dress protection must subsist with the recognition
8  that in many instances there is no prohibition against copying goods and products . . .
9  [and] [a]llowing competitors to copy will have salutary effects in many instances");
10 *Ezaki*, 2021 WL 253451, at *2 ("Copying is usually legal. It is part of market
11 competition."); McCarthy § 8:9 ("[C]opying [product designs] is not only permitted
12 but is encouraged as an essential ingredient of free competition."). Further, copying
13 alone is not evidence of secondary meaning because competitors may intentionally
14 copy product features for a variety of reasons unrelated to secondary meaning such as
15 consumer preference and economic benefits. *Fuddruckers, Inc. v. Doc's B.R. Others,*
16 *Inc.*, 826 F.2d 837, 844-45 (9th Cir. 1987) ("[Competitors] may, for example, choose
17 to copy wholly functional features that they perceive as lacking any secondary
18 meaning because of those features' intrinsic economic benefits"); *Walker*, 549
19 F.Supp.2d at 1168 ([Competitors] may, for example, choose to copy design traits in
20 response to consumer preference); *see also* McCarthy § 8:9 ("Copying [is] more likely
21 based on a desire to capitalize on the intrinsic desirability of the successful design
22 rather than on any alleged source-identifying secondary meaning developed by the
23 senior user."). In *Continental Laboratory Products, Inc.*, the court elaborated on the
24 standard:

25      To derive secondary meaning from deliberate copying, the
26      court must forge a circular chain of inferences: (1) the
27      plaintiff's product mark or design has secondary meaning;
28      (2) the defendant knew about this secondary meaning; (3)

1       the defendant copied the mark or design to exploit this

2       secondary meaning and confuse consumers; and (4) thus the

3       mark or design has secondary meaning. As discussed

4       below, the factual assumptions incorporated into each step

5       of this inferential chain do not apply to many product design

6       cases, including this one.

7   114 F. Supp. 2d at 1009.

8       Because Plaintiff and Counter-defendant cannot establish acquired

9   distinctiveness of Liaigre Furniture, its trade dress claim fails as a matter of law.

10  Although Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-

11  defendant will not be able to satisfy its burden in its case in chief, Defendants and

12  Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff

13  and Counter-defendant's allegations.  Below is the key evidence that Defendants and

14  Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive

15  summary of all such evidence.

16            **(i)    Key Evidence**

17      Defendants and Counterclaim Plaintiffs' key evidence refuting acquired

18  distinctiveness includes the following:

19      1.  Testimony

20          a.  Robert Wallace regarding secondary meaning consumer surveys.

21          b.  Lance Rake regarding lack of secondary meaning.

22          c.  Erik Vogt regarding lack of passing off, knowledge of the furniture

23              industry, and lack of acquired distinctiveness in product designs that

24              appeal to consumers because of design aesthetics.

25          d.  Robert Spurlock regarding lack of passing off, knowledge of the

26              furniture industry, and lack of acquired distinctiveness in product

27              designs.

28

e.  Rob Hendrix regarding lack of passing off, knowledge of the furniture industry, and lack of acquired distinctiveness in product designs.

f.  Lori Gentile lack of passing off, knowledge of the furniture industry, and lack of acquired distinctiveness in product designs.

g.  Anne Michaelsen lack of passing off, knowledge of the furniture industry, and lack of acquired distinctiveness in product designs.

h.  Plaintiff and Counter-defendant witnesses who testify regarding Liaigre Furniture US sales, advertising, alleged trade dress features, and lack of acquired distinctiveness.

2.  Exhibits

a.  Robert Wallace CV, expert testimony, and survey results.

b.  Plaintiff and Counter-defendant's supplemental responses to interrogatories Nos. 7-8. (Plaintiff and Counter-Defendant Liaigre Inc's First Supplemental Responses and Written Objections to Defendant California Furniture Collection, Inc.'s Interrogatories, Set One).

c.  Documents regarding advertising of Liaigre Furniture. (PLA_004848, PLA_004363, PLA_004399, PLA_002309, PLA_002311, PLA_002312, PLA_002313, PLA_004884, PLA_004885, PLA_005048, PLA_002317, PLA_002321, PLA_002324, PLA_002325, PLA_002317, PLA_004398, PLA_004275, PLA_002331, PLA_002332, PLA_002336, PLA000567, PLA_004892, PLA_002330, PLA_002339, PLA_002340, PLA_002341, PLA_002345, PLA_002346, PLA_004728, PLA_004880, PLA_004881, PLA_004882, PLA_004890, PLA_004233, PLA_004234, PLA_004968, PLA_004969, PLA_005023, PLA_002350, PLA_002351, PLA_002352, PLA_004714, PLA_004715, PLA_004723,

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

PLA_002356,     PLA_002359,     PLA_002362,     PLA_002365,
PLA_002366,     PLA_002367,     PLA_002368,     PLA_004911,
PLA_002377,     PLA_002378,     PLA_002381,     PLA_004684,
PLA_004685,   PLA_002314,   PLA_002318,     PLA_002322,
PLA_002333,     PLA_002334,     PLA_002337,     PLA_002347,
PLA_002357, PLA_002360, PLA_002363, PLA000803).

d.  Demonstrative exhibit depicting the Bomarzo Side Table with the Plaintiff and Counter-defendant's trade dress definition.

e.  Demonstrative exhibit depicting the Calme Plat Bench with the Plaintiff and Counter-defendant's trade dress definition.

f.  Demonstrative exhibit depicting the Centaure Table with the Plaintiff and Counter-defendant's trade dress definition.

g.  Demonstrative exhibit depicting the Corvette Desk with the Plaintiff and Counter-defendant's trade dress definition.

h.  Demonstrative exhibit depicting the Galion Console with the Plaintiff and Counter-defendant's trade dress definition.

i.  Demonstrative exhibit depicting the Maritime Chair with the Plaintiff and Counter-defendant's trade dress definition.

j.  Demonstrative exhibit depicting the Misaine Table with the Plaintiff and Counter-defendant's trade dress definition.

k.  Demonstrative exhibit depicting the Somaria Table with the Plaintiff and Counter-defendant's trade dress definition.

l.  Demonstrative exhibit depicting the Bomarzo Side Table with amount of sales prior to alleged infringement.

m. Demonstrative exhibit depicting the Calme Plat Bench with amount of sales prior to alleged infringement.

n.  Demonstrative exhibit depicting the Centaure Table with amount of sales prior to alleged infringement.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

o. Demonstrative exhibit depicting the Corvette Desk with amount of sales prior to alleged infringement.

p. Demonstrative exhibit depicting the Galion Console with amount of sales prior to alleged infringement.

q. Demonstrative exhibit depicting the Maritime Chair with amount of sales prior to alleged infringement.

r. Demonstrative exhibit depicting the Misaine Table with amount of sales prior to alleged infringement.

s. Demonstrative exhibit depicting the Somaria Table with amount of sales prior to alleged infringement.

### (c)   Ownership

Plaintiff and Counter-defendant has the burden of proving ownership. *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). To demonstrate ownership for purposes of standing under 15 U.S.C. § 1125(a), Plaintiff and Counter-defendant "must prove [it] is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1125 (9th Cir. 2008). Further, Plaintiff and Counter-defendant must show "injury to a commercial interest in sales or business reputation proximately caused by the [Defendants and Counterclaim Plaintiffs'] misrepresentations. *Metaquotes Ltd. v. Metaquotes Software Corp.*, No. 8:22-CV-00462-SB-DFM, 2023 WL 3506413, at *8-9 (C.D. Cal. May 17, 2023). An exclusive license or an assignment of the mark with the goodwill of the business may be sufficient to demonstrate cognizable interest of a nonowner. *Hill Collections, Inc. v. Safeway, Inc.*, No. CV199570MWFJEMX, 2019 WL 8889998 (C.D. Cal. Dec. 17, 2019) (finding a lack of standing where an assignment did not include transfer of the goodwill of the business); *Spin Master, Ltd. v. Zobmondo Ent.*, LLC, No. CV 06-3459 ABC PLAX, 2011 WL 3714772, at *6 (C.D. Cal. Aug. 22, 2011).

1    A trade dress "licensee becomes the owner . . . for standing purposes and gains
2    the right to sue on its own" only where the licensor granted an exclusive license
3    transferring "all substantial rights" in the trade dress to the licensee. *Mosaic Brands,*
4    *Inc. v. Ridge Wallet LLC*, No. 220CV04556ABJCX, 2021 WL 922074, at *2 (C.D.
5    Cal. Jan. 7, 2021) (finding that the same rule for patent licensee standing applies for
6    trade dress licensee standing); *Malovani v. Doe*, No. SACV1100787AGMLGX, 2012
7    WL 12886493, *5 (C.D. Cal. May 14, 2012) (finding that a licensee has standing to
8    bring a trademark claim only where it is transferred "all substantial rights"). If the
9    exclusive license does not transfer "all substantial rights" in the trade dress, then the
10   licensor must be joined as an indispensable party to the litigation. *Mosaic Brands*,
11   2021 WL 922074, at *2; *Malovani*, 2012 WL 12886493, *5.

12   Because Plaintiff and Counter-defendant cannot establish ownership for
13   standing purposes as a licensee, its trade dress claim fails as a matter of law. Although
14   Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant
15   will not be able to satisfy its burden in its case in chief, Defendants and Counterclaim
16   Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff and Counter-
17   defendant's allegations. Below is the key evidence that Defendants and Counterclaim
18   Plaintiffs intend to rely on, but it is not intended to be an exhaustive summary of all
19   such evidence.

20                                  **(ii)    Key Evidence**

21   Defendant's key evidence refuting ownership includes the following:

22   1. Testimony

23         a. Christophe Caillaud regarding the ownership of Liaigre France and
24            Liaigre U.S. intellectual property rights.

25   2. Exhibits

26         a. Trademark registration certificate on file with the USPTO for Liaigre
27            showing that the Liaigre trademark is owned by Liagire France, not
28            Liaigre USA.

---

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

b.  Letter from Liaigre France granting Christian Liaigre Inc. distribution rights without granting all substantial rights to trade dress. (ECF No. 110-2 at 66).

### (d)  Non-Functionality

Functional product features do not receive trade dress protection and Plaintiff and Counter-defendant bears the burden of proving non-functionality. 15 U.S.C. § 1125(a)(3); *TrafFix*, 532 U.S. at 30 ("[T]rade dress protection may not be claimed for product features that are functional."). Under established Ninth Circuit case law, functionality may be (a) utilitarian or (b) aesthetic. *Blumenthal*, 963 F.3d at 865.

Utilitarian functionally is based on whether the product serves some functional purpose. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998); *see Blumenthal*, 963 F.3d at 865. Plaintiff and Counter-defendant bears the burden of proving the Liaigre Furniture product features do not have utilitarian functionality under the Ninth Circuit's two-step test. 15 U.S.C. § 1125(a)(3); *See Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1128–29 (9th Cir. 2015) ("[T]he test for functionality proceeds in two steps.") (quoting *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006). Under step one, the Plaintiff and Counter-defendant must prove the asserted trade dress is not "essential to the use or purpose of the article" and does not "affect[] [its] cost or quality." *Id.* at 1129; *see also TrafFix*, 532 U.S. at 32–33. Factors to consider for step one include: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantage of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf*, 158 F.3d at 1006. "If the claimed trade dress is determined to be functional under Step One, then 'the inquiry is over.'" *Millennium Labs.*, 817 F.3d at 1129 (quoting *Au-Tomotive Gold*, 547 F.3d at 1072). If not, the analysis proceeds to "Step Two," under which Plaintiff and Counter-defendant must prove that trade dress protection "would [not]

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  impose a significant non-reputation-related competitive advantage." *Id.*

2        Aesthetic functionality is "based on how good the product looks. . ."
3  *Blumenthal*, 963 F.3d at 865. The Plaintiff and Counter-defendant bears the burden
4  of proving that defined trade dress features of the Liaigre Furniture identify the source
5  of the product and not the aesthetics of the product itself. *See* 15 U.S.C. § 1125(a)(3)
6  (Party asserting trade dress for an unregistered mark bears the burden of proving non-
7  functionality). The focus is on "eye-appeal" of the claimed "trade dress" product
8  features to consumers – *i.e.,* consumers are attracted to the furniture because of its
9  attractiveness not because the features serve to indicate a source of origin. As the
10  Ninth Circuit has described, "[f]unctional' in this sense might be said to connote other
11  than a trademark purpose," and there is generally no right to relief under trade dress
12  law. *See Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952). In
13  *Pagliero*, the evidence demonstrated "over and over again that one of the essential
14  *selling features* of hotel china, if indeed, not the primary, is the design. The
15  attractiveness and eye-appeal of the design sells the china." *Id.* at 343-44.

16        The Third Circuit explained the rationale of aesthetic functionality that the
17  Ninth Circuit has adopted:

18          . . . [I]t will be useful to review the rationale for and
19          application of the doctrine of aesthetic functionality. One of
20          the essential elements of the law of trademarks, even at
21          common law where it was part of the law of unfair
22          competition, was the principle that no legal protection
23          would be available for products or features that were
24          functional. [internal citation omitted]. The purpose of the
25          rule precluding trademark significance for functional
26          features is to prevent the grant of a perpetual monopoly to
27          features which cannot be patented. [internal citation
28          omitted]. If this area of the law were to be

> compartmentalized, one could ascribe to the patent laws protection of those utilitarian features which Congress has chosen to protect, and to the trademark law protection of fanciful or arbitrary features which have achieved recognition as indicia of origin. Products or features which have not qualified for patent protection but which are functional are in the public domain, and are fair game for imitation and copying. Our natural inclination to disapprove of such conduct must give way to the public policy favoring competition, even by slavish copying, of products not entitled to federal patent protection.

*Keene Corp. v. Paraflex Industries, Inc.*, 653 F.2d 822, 824 (3d Cir. 1981); *see also Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237 (1964) ("To forbid copying would interfere with the federal policy, found in Art. I, s 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain.")

Because Plaintiff and Counter-defendant cannot establish that the Liaigre Furniture is non-functional, its trade dress claim fails as a matter of law. Although Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant will not be able to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's allegations. Below is the key evidence that Defendants and Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive summary of all such evidence.

### (i)    Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence refuting non-functionality includes the following:

1. Testimony

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

a. Lance Rake regarding utilitarian functionality and similar products.

b. Erik Vogt regarding the quality and usefulness of furniture, and the appealing aesthetics of Liaigre Furniture.

c. Rob Hendricks regarding the appealing aesthetics of Liaigre Furniture.

d. Robert Spurlock regarding the appealing aesthetics of Liaigre Furniture.

e. Lori Gentile regarding the appealing aesthetics of Liaigre Furniture.

f. Anne Michaelson regarding the appealing aesthetics of Liaigre Furniture.

2. Exhibits

a. Images of Liaigre Furniture. (PLA_00245, PLA_002354, TL000167-00168, TL00158-00159, TL00167-0168, TL000115 TL000098-000099, TL000106, PLA_002345, PLA_002368, TL000183-000184, TL000123-000125, PLA_002381, Gentile Deposition Exh. 3).

b. Lance Rake CV and exhibits to expert report. (ECF Nos. 97-28, 97-29, 97-30).

### (e)    Likelihood of Confusion

Plaintiff and Counter-defendant bears the burden of proving likelihood of confusion between the Liaigre Furniture and the allegedly infringing CFC furniture. *Disc Golf*, 158 F.3d at 1005; *Art Attacks*, 581 F.3d at 1145. In the Ninth Circuit, the likelihood of confusion analysis in a traditional trademark case is based on the following eight factors: (1) strength of asserted trade dress; (2) proximity of the goods; (3) similarity of the asserted trade dress; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d

341 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). Here, however, this is a product design trade dress case, and the only relevant factors are (1), (4), and (6). There is no "mark" being used by either party, so the other factors are confusing and misleading for a jury. The key factors are whether consumers are likely misled as to the source of the goods, and there is no evidence of confusion in this case. Plaintiff and Counter-defendant's failure to provide consumer survey evidence showing confusion "'warrants a presumption that the results would have been unfavorable.'" *James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC ANX, 2013 WL 655314, at *9 (C.D. Cal. Feb. 21, 2013) (quoting *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999) *aff'd*, 202 F.3d 278 (9th Cir. 1999)).

When the consumers are sophisticated professionals and/or the involved products are expensive, then the sixth factor weighs against a likelihood of confusion. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) (internal quotes omitted) (emphasis in original) (finding possibility that industry professionals being confused about source of sophisticated database products "almost nil"); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) (stating that "no one factor is dispositive of the 'likelihood of confusion' inquiry," although acknowledging that sophistication of purchasers may, in certain circumstances, preclude a finding of likelihood of confusion"); *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989) (where the purchasers of the parties' goods are highly specialized professional purchasers who would be expected to exercise a high degree of care in making their purchase decisions); *Network Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08-4675-JFW RZX, 2009 WL 5908719, at *9 (C.D. Cal. Sept. 14, 2009) ("[W]here goods are expensive or purchased after a lengthy sales cycle by a knowledgeable consumers, confusion is unlikely."); *Edge Wireless, LLC v. U.S. Cellular Corp.*, 312 F. Supp. 2d 1325, 1333 (D. Or. 2003) ("It is generally assumed

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   that consumers with expertise or who are buying expensive products or services
2   exercise a greater degree of care when doing so and are thus less easily confused.").
3   Finally, Defendants and Counterclaim Plaintiffs furniture are sold under their own
4   Robert James Collection brand name, thus negating any potential for confusion. *See*
5   *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir.
6   1992)("Despite the similarity between certain aspects of the two trade dresses, when
7   taken as a whole, including the prominently displayed names, they are not similar in
8   any manner that is likely to cause consumer confusion [.]"); *First Brands Corp. v.*
9   *Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987) (finding that differences in
10  labels are sufficient to finding no likelihood of confusion)

11      Because Plaintiff and Counter-defendant cannot establish likelihood of
12  confusion, its trade dress claim fails as a matter of law. Although Defendants and
13  Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant will not be able
14  to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are
15  nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's
16  allegations.  Below is the key evidence that Defendants and Counterclaim Plaintiffs
17  intend to rely on, but it is not intended to be an exhaustive summary of all such
18  evidence.

19          **(i)    Key Evidence**

20      Defendant and Counterclaim Plaintiffs' key evidence refuting likelihood of
21  confusion includes the fact that there is no proof of actual consumer confusion,
22  Plaintiff and Counter-defendant did not provide any survey to support the claim of
23  likelihood of confusion, and that consumers know the difference between the furniture
24  brands:

25      1. Testimony

26          a. Lori Gentile regarding sophisticated consumers and lack of
27             confusion.

28          b. Anne Michaelsen regarding sophisticated consumers and lack of

confusion.

    c. Erik Vogt regarding lack of intent to confuse or pass off, no actual confusion, sophisticated consumers, and lack of confusion.

    d. Thais Roda regarding sophisticated consumers and lack of confusion.

    e. Robert Spurlock regarding sophisticated consumers and lack of confusion.

    f. Rob Hendrix regarding sophisticated consumers and lack of confusion.

2. Exhibits

    a. Trademark registration certificates on file with the USPTO for the Christian Liaigre brand.

    b. Trademark registration certificate on file with the USPTO for the Robert James Collection brand.

    c. Images of Liaigre Furniture. (PLA_00245, PLA_002354, TL000167-00168, TL00158-00159, TL00167-0168, TL000115 TL000098-000099, TL000106, PLA_002345, PLA_002368, TL000183-000184, TL000123-000125, PLA_002381, Gentile Deposition Exh. 3).

    d. Images of the Robert James Collection furniture at issue. (CAL000062, CAL000079, CAL000020, CAL000033, CAL000010, CAL000012, CAL000050, CAL000056, CAL000065, CAL000067).

## C. Violation of California Unfair Competition Law, Business and Professions Code §§17200 et seq.

### 1. Elements of Claim

To establish this claim, Plaintiff and Counter-defendant bears the burden proving the elements outlined in Section II.B: (i) the trade dress has acquired distinctiveness; (ii) Plaintiff and Counter-defendant owns the trade dress; (iii) the trade dress is non-functional (iv) the Defendants and Counterclaim Plaintiffs used

Plaintiff and Counter-defendant's trade dress without the consent of the Plaintiff and Counter-defendant in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Plaintiff and Counter-defendant's goods. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (citing *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) ([The Ninth] Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

Additionally, Plaintiff and Counter-defendant must prove "passing off." *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another"); *see also Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) ("The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct."). To be clear, it is only unfair competition when someone attempts to deceive consumers as to the source of the product. *Gum, Inc. v. Gumakers of Am.*, 136 F.2d 957, 960 (3d Cir. 1943) ("[E]ven though there may be an absolute right on the part of the defendant to imitate the plaintiff's product there is no right on the part of the defendant to pass off its product for that of the plaintiff."). On the other hand, exploiting the "goodwill of the article," *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 121 (1938)—the attractive features, of whatever nature, that the product holds for consumers—is robust competition; only deceiving consumers, or exploiting the good will of another producer, is unfair competition.

Because Plaintiff and Counter-defendant cannot establish the essential elements for an unfair competition claim under the UCL, it fails as a matter of law. Although Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

defendant will not be able to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's allegations.  Below is the key evidence that Defendants and Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive summary of all such evidence.

### (i)   Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence refuting unfair competition under the UCL includes all key evidence from Section II.B:

1. Testimony

    a.  Robert Wallace regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

    b.  Erik Vogt regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

    c.  Robert Spurlock regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

    d.  Rob Hendrix regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

    e.  Lori Gentile regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

    f.  Anne Michaelsen regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

g. Plaintiff and Counter-defendant witness with the most knowledge regarding Liaigre Furniture US sales and advertising.

h. Lance Rake regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

i. Because Plaintiff and Counter-defendant must establish the same elements identified in Section II..B above, Defendants and Counterclaim Plaintiffs will rely on additional testimony identified as "Key Evidence" in Section II.B. *See supra* Section II.B.

2. Exhibits

a. Trademark registration certificates on file with the USPTO for the Christian Liaigre brand.

b. Trademark registration certificate on file with the USPTO for the Robert James Collection brand.

c. Because Plaintiff and Counter-defendant must establish the same elements identified in Section II..B above, Defendants and Counterclaim Plaintiffs will rely on additional exhibits identified as "Key Evidence" in Section II.B. *See supra* Section II.B.

**D. Common Law Trade Dress Infringement and Unfair Competition**

**1. Elements of Claim**

To establish this claim, Plaintiff and Counter-defendant bears the burden of proving the same elements outlined in Section II.B: (i) the trade dress has acquired distinctiveness; (ii) Plaintiff and Counter-defendant owns the trade dress; (iii) the trade dress is non-functional (iv) the Defendants and Counterclaim Plaintiffs used Plaintiff and Counter-defendant's trade dress without the consent of the Plaintiff and Counter-defendant in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Plaintiff and Counter-defendant's goods. *Cleary.*, 30 F.3d at 1262–63 (citing *Acad. of Motion*

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Picture Arts & Scis.*, 944 F.2d at 1457 ([The Ninth] Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Rise Basketball Skill Dev., LLC*, 2017 WL 2775030, at *3 ("The Ninth Circuit has held that a common law unfair competition claim for trademark exploitation is analogous to a Lanham Act claim and may be analyzed under the same standard").

Additionally, Plaintiff and Counter-defendant must prove "passing off." *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another"); *see also Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) ("The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct."). To be clear, it is only unfair competition when someone attempts to deceive consumers as to the source of the product. *Gum, Inc. v. Gumakers of Am.*, 136 F.2d 957, 960 (3d Cir. 1943) ("[E]ven though there may be an absolute right on the part of the defendant to imitate the plaintiff's product there is no right on the part of the defendant to pass off its product for that of the plaintiff."). On the other hand, exploiting the "goodwill of the article," *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 121 (1938)—the attractive features, of whatever nature, that the product holds for consumers—is robust competition; only deceiving consumers, or exploiting the good will of another producer, is unfair competition.

Because Plaintiff and Counter-defendant cannot establish the essential elements for a common law unfair competition claim, it fails as a matter of law. Although Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant will not be able to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff

1   and Counter-defendant's allegations.  Below is the key evidence that Defendants and
2   Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive
3   summary of all such evidence.

4                              **(i)      Key Evidence**

5          Defendants and Counterclaim Plaintiffs' key evidence refuting unfair
6   competition under the UCL includes all key evidence from Section II.B:

7          3.  Testimony

8              a.  Because Plaintiff and Counter-defendant must prove the same
9                  elements under this claim as the claim under California Unfair
10                 Competition Law, Business and Professions Code §§17200 et seq,
11                 Defendants and Counterclaim Plaintiffs will rely on the same
12                 testimony identified in Section II.C. *See supra* Section II.C.

13         4.  Exhibits

14             a.  Because Plaintiff and Counter-defendant must prove the same
15                 elements under this claim as the claim under California Unfair
16                 Competition Law, Business and Professions Code §§17200 et seq,
17                 Defendants and Counterclaim Plaintiffs will rely on the same exhibits
18                 identified in Section II.C. *See supra* Section II.C.

19     **E. Counterclaim for Declaratory Judgment of Non-Infringement of**
20         **Copyrights.**

21                         **1.  Elements of Claim**

22         Defendants and Counterclaim Plaintiffs will prevail on this claim if Plaintiff
23  and Counter-defendant is unable prove by a preponderance of the evidence that the
24  Plaintiff and Counter-defendant is the owner of a valid copyright. *Feist Publications*,
25  499 U.S. at 361; Ninth Circuit Manual of Model Civil Jury Instructions § 17.5. The
26  first requirement involves two inquires: (a) whether Plaintiff and Counter-defendant
27  can prove ownership of copyrights under French law, and (b) whether the Liaigre
28  Furniture contain protectable features under US copyright law. *Lahiri*, 513 F.Supp.2d

at 1176 n.4 (When a plaintiff alleges copyright infringement of a foreign work in the US, "[i]nitial ownership of a copyrighted work is determined by the laws in the work's country of origin."); *Star Athletica*, 137 S. Ct. at 1008 ("A valid copyright extends only to copyrightable subject matter.").

The same legal standard for ownership and copyright validity from sections II.A.1(a)-(b) apply. Therefore, Defendants and Counterclaim Plaintiffs will prevail on this claim if Plaintiff and Counter-defendant is unable to meet its burden of proof for its copyright infringement claim under Section II.A.

Because Plaintiff and Counter-defendant cannot establish the essential elements for a copyright claim, it fails as a matter of law and Defendants and Counterclaim Plaintiffs will prevail on their counterclaim for declaratory judgment of non-infringement. Although Defendants and Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant will not be able to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's allegations.  Below is the key evidence that Defendants and Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive summary of all such evidence.

### (i)    Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence in support of non-infringement of copyright includes all key evidence from Section II.A:

1. Testimony
   a. Plaintiff and Counter-defendant's 30(b)(6) deposition testimony by Christophe Caillaud regarding lack of evidence of ownership of a collective work, and testimony that Eric Schmitt who was not a Liaigre France employee created and owns the intellectual property rights in the Bomarzo Table and he did not transfer ownership rights to Liaigre France.
   b. Frauke Meyer regarding lack of evidence of ownership of a collective

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1        work.

2       c. Thais Roda regarding lack of evidence of ownership of a collective

3          work.

4       d. Guillaume Rolland regarding lack of evidence of ownership of a

5          collective work.

6       e. Lance Rake regarding functionality of Liaigre Furniture.

7       f. Erik Vogt regarding usefulness of furniture, normal parts of furniture,

8          and copyright applications for Robert James Collection furniture.

9       g. Rob Hendricks regarding usefulness of furniture and normal parts of

10         furniture.

11       h. Robert Spurlock regarding usefulness of furniture and normal parts

12         of furniture.

13    2. Exhibits

14       a. Plaintiff and Counter-defendant's second supplemental response to

15         Defendants and Counterclaim Plaintiffs' Request For Production No.

16         22 showing Plaintiff and Counter-defendant did not produce any

17         documents evidencing a transfer of rights from Eric Schmitt to

18         Liaigre France for the Bomarzo table.

19       b. Plaintiff and Counter-defendant's responses to Defendants and

20         Counterclaim Plaintiffs' Interrogatories, Set One No. 04.

21       c. Letter from Eric Schmitt to Liaigre France. (ECF No. 98-77).

22       d. Images of the Liaigre Furniture. (TL000134-00135, TL000158-

23         000159, TL000167-000168, TL000115, TL000098-000099,

24         TL000106, PLA_002345, TL000148-000149, PLA_002368,

25         TL000183-000184, TL000123-000125, PLA002381).

26       e. Images of the Robert James Collection furniture at issue.

27         (CAL000062, CAL000079, CAL000020, CAL000033, CAL000010,

28         CAL000012, CAL000050, CAL000056, CAL000065, CAL000067).

  f. US Copyright Office applications and rejections of applications to register the Robert James Collection furniture. (ECF No. 134-3 at 2-26).

  g. US Copyright Office applications and rejections of applications to register the Robert James Collection furniture. (ECF No. 134-3 at 2-26).

### F. Copyright Damages

Plaintiff and Counter-defendant seeks award of compensatory and punitive damages; an accounting for all profits realized by Defendants and Counterclaim Plaintiffs in connection with their marketing and sale of the Defendants and Counterclaim Plaintiffs' furniture; the costs of this action; and a trebling of damages and profits as authorized by law. Because Plaintiff and Counter-defendant is asserting an unregistered foreign copyright, it is not entitled to claim statutory damages or attorney's fees under the Copyright Act. 17 U.S.C. § 412.

### 1. Actual Damages

Plaintiff and Counter-defendant is not entitled to seek recovery of any undisclosed damages. FRCP Rule 26. FRCP Rule 26(a)(1)(A)(iii) requires:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

As recognized by a leading practice guide for federal procedure, "[w]hereas production of the actual documents is generally optional with initial disclosures, it is *mandatory where those documents are the basis for computation of damages*." O'Connell, Stevenson, Federal Civil Procedure Before Trial §11:280 (The Rutter

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

Group 2017); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2nd Cir. 2006). The duty is mandatory and the party claiming damages must make available for inspection and copying the documents or evidence on which the damages computations are based "just as if there had been a formal request for production under Rule 34." The Rutter Group, §11:282.

Failure to comply with Rule 26 has consequences. Rule 37 provides that any party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion, any information not so disclosed. *See* Fed. R. Civ. P. 37(c)(1). Exclusion is "automatic and mandatory" unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. Failure to disclose a proper damages computation or documents in support of damages is clearly not harmless, because Defendants and Counterclaim Plaintiffs have no ability to evaluate the damages claims or defend against them. *See Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179-1180 (9th Cir. 2008) (undisclosed evidence of damages precluded for failure to comply with Rule 26); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1101 (9th Cir. 2001) ("Courts have upheld the use of the [Rule 37] sanction even when a litigant's entire cause of action or defense has been precluded").

Because Plaintiff and Counter-defendant did not disclose any actual damages computation, they are precluded from seeking them. A failure to disclose actual damages in this case is not harmless and is without substantial justification therefore Plaintiff and Counter-defendant are precluded from seeking undisclosed actual damages.

### 2. Defendants and Counterclaim Plaintiffs' Profits

To be awarded Defendants and Counterclaim Plaintiffs' profits as copyright damages, Plaintiff and Counter-defendant must prove by a preponderance of the evidence that Defendants and Counterclaim Plaintiffs' profits are attributable to the

1  infringement. 17 U.S.C.A. § 504(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d

2  700, 711 (9th Cir. 2004). The award may not include Plaintiff and Counter-

3  defendant's actual damages. 17 U.S.C.A. § 504(b). Plaintiff and Counter-defendant

4  can only be awarded Defendants and Counterclaim Plaintiffs' profits if the Plaintiff

5  and Counter-defendant shows a causal nexus between the infringement and the profits

6  generated indirectly from the infringement. *Polar Bear*, 384 F.3d at 711. To establish

7  a causal nexus, Plaintiff and Counter-defendant "must proffer some evidence . . . [that]

8  the infringement at least partially caused the profits that the infringer generated as a

9  result of the infringement." *Id.* (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir.

10  2002)). *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.34.

11      The Defendants and Counterclaim Plaintiffs' profit is determined by

12  subtracting all Defendants and Counterclaim Plaintiffs' expenses from the Defendants

13  and Counterclaim Plaintiffs' gross revenue. *See* 17 U.S.C.A. § 504(b); Ninth Circuit

14  Manual of Model Civil Jury Instructions § 17.34. The Plaintiff and Counter-defendant

15  has the burden of proving the Defendants and Counterclaim Plaintiffs' gross revenue

16  by a preponderance of the evidence. *See* 17 U.S.C.A. § 504(b)*.* The Defendants and

17  Counterclaim Plaintiffs have the burden of proving the portion of the profit, if any,

18  attributable to factors other than copying the copyrighted work. See Ninth Circuit

19  Manual of Model Civil Jury Instructions § 17.34; *Polar Bear*, 384 F.3d at 711. Further

20  the Defendants and Counterclaim Plaintiffs have the burden of proving the

21  Defendants and Counterclaim Plaintiffs' expenses by a preponderance of the

22  evidence. 17 U.S.C.A. § 504(b). Expenses are all operating costs and production costs

23  incurred in producing the Defendants and Counterclaim Plaintiffs' gross revenue. *See*

24  *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984); Ninth

25  Circuit Manual of Model Civil Jury Instructions § 17.34.

26      Because Plaintiff and Counter-defendant cannot establish copyright

27  infringement damages, the claim fails as a matter of law. Although Defendants and

28  Counterclaim Plaintiffs believe that Plaintiff and Counter-defendant will not be able

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

to satisfy its burden in its case in chief, Defendants and Counterclaim Plaintiffs are nonetheless prepared to offer evidence refuting Plaintiff and Counter-defendant's allegations.  Below is the key evidence that Defendants and Counterclaim Plaintiffs intend to rely on, but it is not intended to be an exhaustive summary of all such evidence.

### 3.  Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence for copyright damages includes:

a.  Testimony

    i.  Erik Vogt regarding the value of the Robert James Collection brand name and the costs and expenses to manufacture and sell furniture.

    ii.  Rob Hendrix regarding the value of the Robert James Collection brand name and the costs and expenses to manufacture and sell furniture.

    iii.  Robert Spurlock regarding the value of the Robert James Collection brand name and the costs and expenses to manufacture and sell furniture.

b.  Exhibits

    i.  Defendants and Counterclaim Plaintiffs sales and costs information for the allegedly infringing furniture. (CAL0002585-0003814, CAL0003815-0003848, CAL000167-000206, CAL000287-000694, CAL000695-000719).

### G. Trade Dress Damages

Plaintiff and Counter-defendant seeks award of compensatory and punitive damages; an accounting for all profits realized by Defendants and Counterclaim Plaintiffs in connection with their marketing and sale of the Defendants and

1  Counterclaim Plaintiffs' furniture; the costs of this action; and a trebling of damages
2  and profits as authorized by law.

3  ### 1. Actual Damages

4  Plaintiff and Counter-defendant is not entitled to seek recovery of any
5  undisclosed damages. FRCP Rule 26. FRCP Rule 26(a)(1)(A)(iii) requires:

6  > a computation of each category of damages claimed by the
7  > disclosing party—who must also make available for
8  > inspection and copying as under Rule 34 the documents or
9  > other evidentiary material, unless privileged or protected
10 > from disclosure, on which each computation is based,
11 > including materials bearing on the nature and extent of
12 > injuries suffered.

13 As recognized by a leading practice guide for federal procedure, "[w]hereas
14 production of the actual documents is generally optional with initial disclosures, it is
15 *mandatory where those documents are the basis for computation of damages*."
16 O'Connell,Stevenson, Federal Civil Procedure Before Trial §11:280 (The Rutter
17 Group 2017); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2nd Cir.
18 2006). The duty is mandatory and the party claiming damages must make available
19 for inspection and copying the documents or evidence on which the damages
20 computations are based "just as if there had been a formal request for production
21 under Rule 34." The Rutter Group, §11:282.

22 Failure to comply with Rule 26 has consequences. Rule 37 provides that any
23 party that without substantial justification fails to disclose information required by
24 Rule 26(a) or 26(e)(1) is not, unless such failure is harmless, permitted to use as
25 evidence at trial, at a hearing, or on a motion, any information not so disclosed. *See*
26 Fed. R. Civ. P. 37(c)(1). Exclusion is "automatic and mandatory" unless the
27 sanctioned party can show that its violation of Rule 26(a) was either justified or
28 harmless. Failure to disclose a proper damages computation or documents in support

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

1  of damages is clearly not harmless, because Defendants and Counterclaim Plaintiffs

2  have no ability to evaluate the damages claims or defend against them. *See Hoffman*

3  *v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179-1180 (9th Cir. 2008)

4  (undisclosed evidence of damages precluded for failure to comply with Rule 26); *see*

5  *also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1101 (9th Cir.

6  2001) ("Courts have upheld the use of the [Rule 37] sanction even when a litigant's

7  entire cause of action or defense has been precluded").

8          Because Plaintiff and Counter-defendant did not disclose actual damages, they

9  are precluded from seeking them. A failure to disclose actual damages in this case is

10  not harmless and is without substantial justification therefore Plaintiff and Counter-

11  defendant are precluded from seeking undisclosed actual damages.

12              **2.  Defendants and Counterclaim Plaintiffs' Profits**

13          The Plaintiff and Counter-defendant is entitled to any profits earned by the

14  Defendants and Counterclaim Plaintiffs that are attributable to the infringement,

15  which the Plaintiff and Counter-defendant must prove by a preponderance of the

16  evidence. *See* 15 U.S.C.A. § 1117(a). However, to prevent double recovery, an award

17  of profits may not include any amount taken into account in determining actual

18  damages. *See id.* Profit is determined by deducting all expenses from gross revenue

19  from using the trade dress in the sale of the products. *See* 15 U.S.C.A. § 1117(a);

20  *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1005 (9th Cir. 2004) The

21  Plaintiff and Counter-defendant has the burden of proving Defendants and

22  Counterclaim Plaintiffs' gross revenue by a preponderance of the evidence. *Lindy*,

23  982 F.2d at 1408. Expenses include all operating and production costs incurred in

24  producing the gross revenue. Ninth Circuit Manual of Model Civil Jury Instructions

25  § 15.29. The Defendants and Counterclaim Plaintiffs have the burden of proving the

26  expenses and the portion of the profit attributable to factors other than use of the

27  infringed trade dress by a preponderance of the evidence. 15 U.S.C.A. § 1117(a);

28  Ninth Circuit Manual of Model Civil Jury Instructions § 15.29.

### 3. Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence for trade dress damages includes:

    a. Testimony

        ii. Erik Vogt regarding the value of the Robert James Collection brand name and the costs and expenses to manufacture and sell furniture.

        iii. Rob Hendrix regarding the value of the Robert James Collection brand name and the costs and expenses to manufacture and sell furniture.

        iv. Robert Spurlock regarding the value of the Robert James Collection brand name and the costs and expenses to manufacture and sell furniture.

    b. Exhibits

        v. Defendants and Counterclaim Plaintiffs sales and costs information for the allegedly infringing furniture. (CAL0002585-0003814, CAL0003815-0003848, CAL000167-000206, CAL000287-000694, CAL000695-000719).

        vi. Demonstrative summary of sales revenue, costs, and profits from the Robert James Collection furniture at issue in this case.

### H. Affirmative Defenses [L.R. 16-4.1(d)]

Defendants and Counterclaim Plaintiffs have pleaded and indicated intent to pursue the following affirmative defenses:

### 1. Twelfth Affirmative Defense – Misuse of Copyright

Defendants and Counterclaim Plaintiffs are not liable for copyright infringement because Plaintiff and Counter-defendant's claim is barred by the

doctrine of misuse. The doctrine of copyright misuse prevents enforcement of a copyright during the period it is used "in a manner violative of the public policy embodied in the grant of a copyright" such as "secur[ing] an exclusive right or limited monopoly not granted by Copyright Office." *Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520-21 (9th Cir. 1997) (quoting *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977-79 (4th Cir.1990)). Proof of an antitrust violation is not required to prevail on the defense. *Id.* at 521.

    a. Key Evidence

        i. Testimony

           1. Christophe Caillaud regarding years of copying by others, allowing and promoting copying in the US without copyright notice or application, and unfair use of alleged foreign copyright.

           2. Erik Vogt regarding lack of knowledge of copyright in the furniture.

        ii. Exhibits

           1. Images of the Liaigre Furniture. (TL000134-00135, TL000158-000159, TL000167-000168, TL000115, TL000098-000099, TL000106, PLA_002345, TL000148-000149, PLA_002368, TL000183-000184, TL000123-000125, PLA002381).

           2. US Copyright Office rejections of applications to register Robert James Collection furniture - Brasilia Dining Chair. (ECF No. 134-3 at 2-4).

           3. US Copyright Office rejections of applications to register Robert James Collection furniture - Halcyon Bench, Parisian Legged Dining Table,

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Palmero Dining Table, Santa Ynez Console, Greycliff Dining Table, Greycliff Occasional Table, Untitled. (ECF No. 134-3 at 5-8).

4. US Copyright Office rejections of applications to register Robert James Collection furniture - Parisian Legged Dining Table. (ECF No. 134-3 at 9-11).

5. US Copyright Office rejections of applications to register Robert James Collection furniture - Palmero Dining Table. (ECF No. 134-3 at 12-14).

6. US Copyright Office rejections of applications to register Robert James Collection furniture - Santa Ynez Console. (ECF No. 134-3 at 15-17).

7. US Copyright Office rejections of applications to register Robert James Collection furniture - Greycliff Dining Table. (ECF No. 134-3 at 18-20).

8. US Copyright Office rejections of applications to register Robert James Collection furniture - Greycliff Occasional Table. (ECF No. 134-3 at 21-23).

9. US Copyright Office rejections of applications to register Robert James Collection furniture – Untitled. (ECF No. 134-3 at 24-26).

10. Excerpts from *12 Projects* (Intérieurs & Patrimoine) (12 Projects (Interiors & heritage) book.

11. Excerpt from *Maison Liaigre* book.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**2.  Seventeenth Affirmative Defense – Elements of Copyright Not Protectable**

Defendants and Counterclaim Plaintiffs are not liable for copyright infringement because the claimed subject matter is not copyrightable. The claimed furniture is subject to the useful article doctrine in which a product design is only protectable where it can be separated and exist independently of utilitarian aspects of the article. 17 U.S.C. § 101; *See Star Athletica*, 137 S. Ct. at 1010. Only separate non-useful "features" are considered copyrightable subject matter, and here the "features" are themselves useful articles by definition. *Id.*

a.  Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence refuting validity of copyright includes the following:

i.  Testimony

1.  Lance Rake regarding functionality of Liaigre Furniture.

2.  Erik Vogt regarding usefulness of furniture, normal parts of furniture, and copyright applications for Robert James Collection furniture.

3.  Rob Hendricks regarding usefulness of furniture and normal parts of furniture.

4.  Robert Spurlock regarding usefulness of furniture and normal parts of furniture.

ii.  Exhibits

1.  Images of the Liaigre Furniture. (TL000134-00135, TL000158-000159, TL000167-000168, TL000115, TL000098-000099, TL000106, PLA_002345, TL000148-000149, PLA_002368,

1  TL000183-000184, TL000123-000125, PLA002381).

2.  Images of the Robert James Collection furniture at issue. (CAL000062, CAL000079, CAL000020, CAL000033, CAL000010, CAL000012, CAL000050, CAL000056, CAL000065, CAL000067).

3.  US Copyright Office applications and rejections of applications to register the Robert James Collection furniture. (ECF No. 134-3 at 2-26).

### 3.  Eighteenth Affirmative Defense – Fair Use of Expressive Work

Defendants and Counterclaim Plaintiffs are not liable for trade dress infringement because the Defendants and Counterclaim Plaintiffs' allegedly infringing furniture is an expressive work protected by the First Amendment. The Lanham Act does not apply to artistic expressive works because the "public interest in avoiding consumer confusion" does not "outweigh[] the public interest in free expression. *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 261 (9th Cir. 2018) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989)). Further, even if Plaintiff and Counter-defendant is able to prove it has a valid, protectable trade dress and that Defendants and Counterclaim Plaintiffs used the trade dress, such use is not prohibited under the Lanham Act because it is artistically relevant to the work and does not explicitly mislead consumers as to the source or the content of the work. *Id.* at 264.

#### a.  Key Evidence

Defendants and Counterclaim Plaintiffs' key evidence refuting validity of copyright includes the following:

i.  Testimony

1.  Christophe Caillaude and other Liaigre witnesses

- 51 –

asserting that the Liaigre Furniture are pieces of art, and testimony from Poret re artwork.

2. Robert Wallace regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

3. Erik Vogt regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

4. Robert Spurlock regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

5. Rob Hendrix regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

6. Lori Gentile regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

7. Anne Michaelsen regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

8. Plaintiff and Counter-defendant witness with the most knowledge regarding Liaigre Furniture US sales and advertising.

9. Lance Rake regarding lack of "passing off" and lack of consumer confusion between Liaigre Furniture and Robert James Collection furniture.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

  ii. Exhibits

   1. Images of the Liaigre Furniture. (TL000134-00135, TL000158-000159, TL000167-000168, TL000115, TL000098-000099, TL000106, PLA_002345, TL000148-000149, PLA_002368, TL000183-000184, TL000123-000125, PLA002381).

   2. Excerpts from *12 Projects* (Intérieurs & Patrimoine) (12 Projects (Interiors & heritage) book.

   3. Excerpts from the *LIAIGRE* book.

   4. Excerpt from *Maison Liaigre* book.

## III.  THIRD PARTY STATEMENTS [L.R. 16-4.1(G)]

Defendants and Counterclaim Plaintiffs is not currently aware of any similar statement from a third party.

## IV.  IDENTIFICATION OF ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(H)]

Defendants and Counterclaim Plaintiffs anticipate the following evidentiary issues:

 **A.** Plaintiff and Counter-defendant has indicated an intent to challenge admissibility of several exhibits based on relevance and authentication. Defendants and Counterclaim Plaintiffs are not aware of which exhibits Plaintiff and Counter-defendant intend to challenge but anticipate opposing any challenges.

 **B.** Plaintiff and Counter-defendant has indicated intent to proceed with its *Daubert* Motion to exclude the opinions and testimony of Defendants and Counterclaim Plaintiffs' expert Lance Rake on secondary meaning. Defendants and Counterclaim Plaintiffs have opposed this motion.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF
CONTENTIONS OF FACT AND LAW

C.   Plaintiff and Counter-defendants seek to exclude documents submitted contemporaneously with Lance Rake's expert report. Defendants and Counterclaim Plaintiffs intend to oppose this motion.

D.   Plaintiff and Counter-defendant has indicated an intent to file a *Daubert* Motion to exclude the opinions and survey results of Defendant and Counterclaim Plaintiffs' expert, Robert Wallace. Defendants and Counterclaim Plaintiffs intend to oppose this motion.

E.   Plaintiff and Counter-defendant seeks to exclude the copyright applications filed by Defendants and Counterclaim Plaintiffs for the allegedly infringing furniture at issue in this case. Plaintiff and Counter-defendant claims that the applications were never produced to Liaigre USA and that the denial letters were not produced until after discovery. Defendants and Counterclaim Plaintiffs oppose this request as such registrations and denial letters were discussed at the summary judgment hearing and the Court said the application rejections would be helpful. (Reporter's Transcript of Proceedings for Motions for Summary Judgment Hearing on May 17, 2021 at 11-13). Application rejections from the U.S. Copyright Office were filed and available to Plaintiff and Counter-defendant on May, 27, 2021. (ECF No. 134-3). However, Plaintiff and Counter-defendant never made any objection until now. These application rejections are highly relevant to show that the U.S. Copyright Office does not and would not register furniture products. The Model Instructions on Copyright include an instruction that a plaintiff may obtain a registration. The fact that Plaintiff and Counter-defendant could have filed an application but elected not to do so is relevant, and the rejections are circumstantial evidence for why Plaintiff and Counter-defendant decided not to file applications. The jury should be allowed to hear evidence regarding the U.S. Copyright Office's treatment of similar

furniture.

F.   Plaintiff and Counter-defendant plans to seek an adverse inference at trial alleging that Defendants and Counterclaim plaintiffs admitted to destruction of design files for the furniture at issue in this case. Defendants and Counterclaim Plaintiffs deny such admission and oppose any adverse inference based on this claim at trial, and they intend to file a motion in limine to exclude any reference to this frivolous theory that is unsupported by the testimony and evidence.

G.   Plaintiff and Counter-defendant has indicated intent to file a *motion in limine* to exclude all evidence and argument regarding design and ownership of the Bomarzo Table and its purported relevance to whether the other pieces of Liaigre Furniture are "collective works" created at the initiative of Liaigre France. Defendants and Counterclaim Plaintiffs intend to oppose this *motion in limine*. Plaintiff and Counter-defendant claim that creation and ownership of the Bomarzo table is irrelevant; however, such evidence is relevant circumstantial evidence demonstrating that it was not the business practice of Liaigre France to require Independent Contractor Agreements or employment agreements requiring an assignment of all intellectual property rights. Plaintiff and Counter-defendant rely on the statement made by Christophe Caillaud that the Liaigre Furniture pieces created were part of a collaborative process and that this is "the way the company has been working since the beginning." (Plaintiffs proposed Joint Stipulation of Facts; Badway Dec., Exh. 27, at 22:23-24:22). Defendants and Counterclaim Plaintiffs exposed the fact that this statement was not true because the Bomarzo Side Table was created by Eric Schmitt, a non-employee who never assigned his intellectual property rights in the table to Liaigre France. In fact, Eric Schmitt sent a letter to Liaigre France specifically stating that

1   he would retain ownership of his creations. (ECF No. 98-77). This Court

2   found this circumstantial evidence sufficient for purposes of summary

3   judgment, and these limitations precluded a finding Liaigre France had

4   ownership over the Bomarzo Table. (ECF No. 164 at 16-17).

5   Accordingly, the resolution of this factual dispute is for the jury. The

6   Court also noted that the letter did not identify which pieces of furniture

7   were being referred to. (*Id.* at 17). The fact that Liaigre France did not

8   produce an Independent Contractor Agreement for Eric Schmitt and the

9   letter from Eric Schmitt indicates retention of intellectual property rights

10  is relevant circumstantial evidence that Liaigre France does not have a

11  business practice of acquiring intellectual property rights in all of its

12  furniture pieces, and that it must prove ownership according to French

13  law.

14  **H.**   Defendants and Counterclaim Plaintiffs intend to file a *motion in limine*

15  to exclude Plaintiff and Counterclaim Defendant's claim for actual

16  damages. Plaintiff and Counter-defendant failed to disclose actual

17  damages as required pursuant to Federal Rule Civil Procedure 26 as

18  discussed above. *See supra* Sections II.F. and II.G.

19  **I.**   Defendants and Counterclaim Plaintiffs intend to file a *motion in limine*

20  to exclude any undisclosed testimony or argument regarding actual

21  confusion.

22  **J.**   Defendants and Counterclaim Plaintiffs intend to file a *motion in limine*

23  to exclude all questions, arguments, and comments regarding any alleged

24  destruction of documents by Defendants and Counterclaim Plaintiffs.

25  **K.**   Defendants and Counterclaim Plaintiffs intend to file a *motion in limine*

26  to exclude any questions, arguments, and comments regarding the

27  alleged cease and desist letter sent by Plaintiff and Counter-defendant.

28  **L.**   Defendants and Counterclaim Plaintiffs intend to file a *motion in limine*

1  to exclude any legal argument or adverse inferences during witness
2  testimony and introduction of evidence that copying is wrongful. The
3  Court should also want to provide a jury instruction with quotes from the
4  U.S. Supreme that copying is usually permissible and encouraged as part
5  of marketplace competition. An appropriate jury instruction will ensure
6  fair and equal treatment in a case where Plaintiff and Counter-defendant
7  have indicated they intend to unfairly try and persuade the jury to infer
8  that copying is wrong.

9  M.  Defendants and Counterclaim plaintiffs intend to file a *motion in limine*
10  to exclude misleading hearsay articles and character testimony regarding
11  Christian Liaigre's legacy as an interior designer after his death.

12  N.  Defendants and Counterclaim Plaintiffs object to any side-by-side trade
13  dress comparisons are parties' products because the test for likelihood of
14  confusion is based on how relevant consumers view the products in the
15  marketplace. A side-by-side comparison is not relevant for copyright
16  infringement because the parties can stipulate to substantial similarity.
17  And it is irrelevant for trade dress in this case because the furniture
18  products are not sold side-by-side. *See* J.T. McCarthy, McCarthy on
19  Trademarks and Unfair Competition § 23:59 (5th ed.) (Recognize that a
20  side-by-side comparison is improper if that is not the way consumers
21  encounter the product in the market); *Levi Struss & Co. v. Blue Bell, Inc.*,
22  623 F.2d 817, 822 (9th Cir. 1980) ("It is axiomatic in trademark law that
23  'side by side' comparison is not the test."); *Lisa Frank, Inc. v. Impact*
24  *Intern., Inc.*, 799 F.Supp. 980, 997 (D. Ariz. 1992) ("The test for
25  consumer confusion, however, is not whether the products can be
26  differentiated when subjected to a side-by-side comparison, but rather,
27  whether they create the same general overall impression. Thus, it is well
28  settled that, in reaching a decision regarding the likelihood of confusion,

the jury must evaluate the marks not in the abstract, but rather how they appear in the marketplace. *See Walt Disney Prods. v. Air Pirates,* 581 F.2d 751, 759 (9th Cir. 1978) (trial court should go beyond simple abstract side-by-side  of marks in question).

## V.     BIFURCATION OF ISSUES [L.R. 16-4.3]

The parties have not requested bifurcation of any issues at this time.

## VI.    IDENTIFICATION OF ISSUES TRIABLE TO JURY AND TO COURT [L.R. 16-4.4]

### A.     Issues for the Jury.

Defendants have made a timely demand for jury trial. The following issues are triable to the jury:

1.     Whether Plaintiff and Counter-defendant can prove ownership of copyrights under French law.

2.     Whether Plaintiff and Counter-defendant can demonstrate that conceptually separate features exist in the Liaigre Furniture that are not normal parts of furniture.

3.     Whether Plaintiff and Counter-defendant has a valid license entitling it to sue for trade dress infringement.

4.     Whether Plaintiff and Counter-defendant own valid trade dress rights.

5.     Whether Plaintiff and Counter-defendant can prove secondary meaning.

6.     Whether Plaintiff and Counter-defendant can prove non-functionality.

7.     Whether Plaintiff and Counter-defendant can likelihood of confusion for trade dress infringement.

### B.     Issues for the Court.

The following issues are triable to the Court:

1.     Whether Plaintiff and Counter-defendant has standing to sue for trade dress infringement given the Copyright Act preemption of claims for copying.

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

2.    Whether Plaintiff and Counter-defendant is entitled to an injunction and profit disgorgement.

## II.    IMPORTANT ISSUES OF LAW [L.R. 16-4.1(I)]

Plaintiff and Counter-defendant has identified the following issues of law: (1) French law on the issue of copyright ownership; and (2) interpretation and the application of the separability doctrine. These issues are subject to the jury instructions and prior arguments in Defendants and Counterclaim Plaintiffs' briefing. (ECF No. 97-1; ECF No. 167-1).

Defendants and Counterclaim Plaintiffs anticipate that Plaintiff and Counter-defendant will argue that copying is wrongful. Copying itself is not wrongful absent some underlying intellectual property right. The Court will likely need to provide a preliminary and/or final jury instructions or provide a limiting instruction that copying is not wrongful. The jury should not be swayed prior to or during trial to believe that copying is somehow wrongful when the U.S. Supreme Court has declared that in many instances (particularly for product designs), copying is beneficial.

## III.    ATTORNEY FEES AND EXCEPTIONALITY [L.R. 16-4.5]

Defendants and Counterclaim Plaintiffs seek an award of costs of this suit to the extent permitted by law (including as to the claims they already prevailed on), including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505. Such award of attorney's fees is a matter of the Court's discretion Defendants and Counterclaim Plaintiffs need not prove that the lawsuit was frivolous or brought in bad faith, instead an award of attorney's fees shall be up to the Court's equitable discretion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994); *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 557-60 (9th Cir. 1996). Plaintiff and Counter-defendant may not seek an award of attorney's fees under 17 U.S.C. § 505 because the copyright asserted is an unregistered foreign copyright. 17 U.S.C. § 412 (Registration is a prerequisite to seeking an award of statutory damages or attorney's fees).

Further, Defendants and Counterclaim Plaintiffs seek an award of reasonable

DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

attorney's fees under 15 U.S.C. § 1117(a). A court may award attorney's fees to a prevailing party in "exceptional cases" involving factors such as "frivolousness, motivation, objective unreasonableness of the facts or legal theories, and the need to compensate the prevailing party or deter the losing party." *Nutrition Distribution LLC v. PEP Rsch.*, LLC, 804 F. App'x 759, 759-60 (9th Cir. 2020).

## IX.    <u>ABANDONMENT OF ISSUES [L.R. 16-4.6]</u>

Defendants and Counterclaim Plaintiffs are abandoning the following Affirmative Defenses for trial without prejudice:

- First Affirmative Defense – Failure to State a Claim[7]
- Second Affirmative Defense – Statute of Limitations
- Third Affirmative Defense – Public Domain
- Fourth Affirmative Defense – Laches
- Sixth Affirmative Defense – Release, Waiver, and Estoppel
- Seventh Affirmative Defense – Acquiescence
- Ninth Affirmative Defense – Failure to Mitigate
- Thirteenth Affirmative Defense – Failure to Join Indispensable Party
- Fourteenth Affirmative Defense – Consent

DATED: January 2, 2024

*/s/Scott P. Shaw*

Scott P. Shaw

*Attorneys for Defendants and Counterclaim Plaintiffs,*
*California Furniture Collection, Inc.*
*d/b/a Robert James Collection and*
*Gina B & Company*

---

[7] This defense is abandoned for trial subject to the Court's ruling on Defendants and Counterclaim Plaintiffs' December 29, 2023 motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 204-1).